533 A.2d 165

**Bernice SAGALA, Administratrix of the Estate of Steven J. Sagala, Appellant,**

**v.**

**J.O. TAVARES, M.D., Appellee.**

Superior Court of Pennsylvania.

Argued Aug. 25, 1987.

Filed Nov. 4, 1987.

Donald J. McCormick, Pittsburgh, for appellant.

Thomas M. Lent, Erie, for appellee.

Before ROWLEY, DEL SOLE and JOHNSON, JJ.

DEL SOLE, Judge:

Appellant–Bernice Sagala, Administratix of the Estate of Steven J. Sagala, Decedent, filed a medical malpractice action against Appellee–Dr. J.O. Tavares, seeking compensation for the death of her husband. The action was based on Appellee's alleged failure to obtain Decedent's informed consent prior to performing surgery. Following trial, a jury rendered a defense verdict. Post-trial motions were denied, judgment was entered on the verdict, and this appeal ensued.

On appeal, Appellant argues that the trial court erroneously charged the jury regarding a plaintiff's burden of proof in an informed consent case. Appellant also contends

that expert testimony concerning prevailing medical standards in advising patients of the contraindications of certain medical procedures was erroneously admitted. We agree and reverse.

A brief summary of the facts is appropriate. In January, 1979, Decedent consulted Appellee regarding problems that he had been experiencing with his feet. Appellee recommended surgery to alleviate the discomfort; and, based on this advice, Decedent agreed. The operation was performed on January 30, 1979. Shortly after his February 6, 1979 hospital release, Decedent died of a bilateral pulmonary embolism, which resulted from the surgery. Appellee concedes that he did not advise Decedent that a pulmonary embolism was one of the risks associated with this type of surgery.

Appellant alleges that the testimony of two expert witnesses was improperly admitted insofar as they were permitted to testify as to whether or not it would have been medically proper to advise Decedent that a pulmonary embolism might result from the foot surgery. Appellant first disputes the admissibility of testimony by Dr. C. McCollister Evarts, an expert called by Appellee. During the course of testimony, the witness stated that "we do not instruct our patients that this [pulmonary embolism] is a complication or a possible complication." (V.D., 9/6/85, 35–36).[1] Later, Dr. Evarts was asked the following question:

Q. Based upon the patient's [Decedent's] past history and the records you've read, and in your opinion as a surgeon, do you have an opinion within a reasonable degree of medical certainty of whether it would have been medically proper within reason for Dr. Tavares to have warned Steven Sagala of the possibility of a pulmonary embolism?

A. Yes, I do.

Q. What would that opinion be?

1. The term "V.D." refers to the videotape deposition.

A. I don't feel—I feel it's a remote possibility, and one does not mention remote possibilities when obtaining informed consent.

(V.D., 9/6/85, 39).

Next, Appellant challenges the testimony of Dr. Paul W. Layden, another expert witness called by Appellee. This witness was asked:

Q. [I]n your opinion, is the risk of pulmonary embolism in connection with an operation on the forefoot, of the type we had here in this case, is that risk sufficiently remote that it need not be dealt with or considered, it need not be considered in dealing with any patient?

THE COURT: I think you want to strike out the word "dealing," and, if you will, rephrase it, Mr. Schaaf.

Q. The thing of it is, Doctor, this risk is so remote it need not be considered when you are dealing with any patient.

THE COURT: Do you understand the question, Doctor? Because we want to be very specific, and I want you to answer that question.

A. The answer is yes.

(N.T., 6/11/86, 54–55).

■■■ We agree with Appellant's position that this type of testimony was improperly submitted to the jury. The doctrine of informed consent is grounded upon the tenet that a physician is precluded from administering to, or operating upon, a mentally competent adult patient in non-emergency situations absent that person's consent. *Festa v. Greenberg*, 354 Pa.Super. 346, 511 A.2d 1371, 1373 (1986). Consent to medical treatment is valid if:

the physician disclosed all those facts, risks and alternatives that a reasonable man in the situation which the physician knew or should have known to be the plaintiff's, would deem significant in making a decision to undergo the recommended treatment ... The physician is bound to disclose only those risks which a reasonable man would consider material to his decision whether or not to undergo treatment.

*Cooper v. Roberts,* 220 Pa.Super. 260, 286 A.2d 647, 650 (1971). In essence, this is the prudent patient standard. Therefore, in determining whether a physician breached his duty to his patient, "the standard of care is not what a reasonable medical practitioner would have done in the situation but whether the physician disclosed those risks which a reasonable man would have considered material to his decision whether or not to undergo treatment." *Festa, supra,* at 511 A.2d at 1375. Materiality is established by a two step process. First, the trier of fact must be supplied with expert information as to the nature of the harm and the probability of it occurring. However, it is the trier of fact, not the expert, who must decide the materiality of the risk involved and whether the probability of that type of harm is a risk which a reasonable patient would consider in rendering a decision on medical treatment. *Jozsa v. Hottenstein,* 364 Pa.Super. 469, 528 A.2d 606, 608 (1987).

■ In the case at bar, the two expert witnesses should not have been permitted to comment on whether or not members of the professional community would have apprised Decedent of the possibility of pulmonary embolism. Insofar as Pennsylvania has adopted the reasonable patient approach, evidence of professional standards incorrectly invites the jury to consider whether the physician acted in conformance with the customary practices of other physicians. In *Cooper, supra,* we commented on the use of expert testimony to establish the medical community's standard of disclosure:

> [a]lthough we have a high regard for the professionalism of the medical community, *the standard of disclosure exercised therein bears no inherent relationship to the amount of knowledge that any particular patient might require in order to make an informed choice.*

*Cooper, supra,* at 286 A.2d at 650 (emphasis supplied). Indeed, the jury's consideration must center on what information the particular patient needed in order to make an intelligent decision. "There is no need to extend the requirement of expert testimony into areas where no technical

expertise is necessary." *Cooper, supra,* at 286 A.2d at 651. The determination of what a reasonable patient would do or consider significant under certain circumstances is "standard fare for jurors", for which expert assistance is not necessary. *Id.* at 286 at 651. We are of the opinion that the introduction of the professional customs testimony usurped the role of the trier of fact and introduced principles that were incompatible with the reasonable patient standard adopted by this Commonwealth. Accordingly, we must vacate the judgment and remand for a new trial.

The next area of consternation deals with the trial court's charge to the jury. We are mindful of our appellate scope of review. In reviewing the sufficiency of a jury charge, we must examine the charge in its entirety to determine whether or not error was committed and whether that error prejudiced the complaining party. "If the charge is erroneous in a basic sense and the extent to which it might have been prejudicial to the complaining party cannot be determined, the grant of a new trial is proper." *Murphy v. Publicker Indust.,* 357 Pa.Super. 409, 414, 516 A.2d 47, 50 (1987).

Appellant draws our attention to that aspect of the jury charge in which the trial court set out Appellant's burden of proof to the jury:

[i]n this case, Mrs. Sagala has the burden of proving two things:

(1) that Dr. Tavares did not adequately explain to her husband the risks and possible adverse consequences of the recommended surgery or that Dr. Tavares did not adequately explain methods of treatment, other than the recommended surgery;

(2) That if a reasonable person in Mr. Sagala's condition had known the risks and possible adverse consequences of the recommended surgery, that a reasonable person would not have undergone the surgery.

(N.T., 6/12/86, 143). The substance of these instructions was repeated throughout the charge. (N.T., 6/12/86, 143, 150).

Further, Appellant points to that portion of the jury instructions in which the trial judge rendered the "special jury findings". The second question read:

'[i]f you find the risk of pulmonary embolism was one in which a reasonable man in the position of Steven J. Sagala would consider material to his decision whether or not to undergo treatment, would the reasonable man in the position of Steven Sagal have consented to the surgery despite disclosures of that risk?' And, again, the answers are yes or no, and if your answer is yes, you must find for the defendant. If your answer is no, you must find for the plaintiff.

(N.T., 6/12/86, 161).

▆▆▆ Appellant complains that the jury instruction misstated the law of informed consent with respect to what must be proven by a plaintiff. We agree. It bears repeating that the standard is whether the defendant-physician disclosed all the facts, risks, and alternatives that a reasonable person in the situation, which the physician knew or should have known to be the plaintiff-patient's, would declare significant in making a decision to undergo the recommended treatment. *Jozsa, supra,* at 528 A.2d at 607, *quoting Cooper, supra,* at 286 A.2d at 650. It was improper for the trial court to add that a jury verdict for the plaintiff could only occur when the reasonable patient in Decedent's position, knowing of the risk of pulmonary embolism, *would not have consented to surgery.* The law in this area of informed consent does not mandate that a risk is material only if its disclosure would result in the patient's decision to refuse medical treatment. The primary focus of Pennsylvania law with respect to informed consent is to guarantee that a patient is supplied with all the material facts from which an intelligent choice as to medical attention may be reached, *regardless of whether the patient chooses rationally. Cooper, supra,* at 286 A.2d at 650. Recovery is based on the administration of surgical procedure in the absence of the patient's informed consent, not on whether the patient would not have gone through with

the operation if warned of a particular danger. As a practical matter, an operation performed without informed consent is a technical battery, which makes the physician liable for any injuries resulting from that invasion. *Id.*, at 286 A.2d at 659. Thus, this aspect of the jury charge was prejudicial to Appellant's case.

■ Finally, Appellant posits that the trial court incorrectly introduced negligence principles into the case when advising the jury of the physician's duty to inform:

> [e]ven if a doctor did not stress possible ill effects *reasonably based upon his own experience and education,* but if he did *reasonably explain* the possible benefits of the surgery and the dangers attendant to the surgery if the surgery were performed as well as the alternative methods of treatment and the dangers to the patient if the surgery was not performed, then, in such case, a jury would find in favor of the doctor, since the doctor should not be placed in the position of talking the patient out of the treatment which he *reasonably believes to be necessary and safe.*

(N.T., 6/12/86, 149). The above-cited portion of the charge erroneously diverted the jury's attention to whether the defendant-physician conformed to the standard of disclosure of the reasonable practitioner in his community. Once again, *Cooper, supra,* is dispositive. In *Cooper,* we noted the fundamental difference between malpractice suits and informed consent cases. In the former, "the gist is whether the physician failed to conform to accepted medical practice." In the latter, "the salient question is whether the patient made an effective assent to treatment." *Id.* at 286 A.2d at 651. Based on this distinction, the jury was incorrectly directed to consider Appellee's action in light of what he reasonably believed was necessary and safe.

Judgment reversed. Case remanded for new trial. Jurisdiction is relinquished.

ROWLEY, J., concurs in the result.