594 A.2d 353

**Robert L. SANDERSON and Nola L. Sanderson, his Wife, Appellants,**

v.

**FRANK S. BRYAN, M.D., LTD.**

Superior Court of Pennsylvania.

Argued June 12, 1991.

Filed July 12, 1991.

P. Daniel Altland, Harrisburg, for appellants.

Charles E. Wasilefski, Harrisburg, for appellee.

Before CIRILLO, TAMILIA and HESTER, JJ.

TAMILIA, Judge:

Robert L. Sanderson and Nola L. Sanderson, his wife, take this appeal from the August 10, 1990, judgment in favor of appellee, Frank S. Bryan, M.D., against whom appellants had brought suit alleging medical malpractice and lack of informed consent.

In the spring of 1979 appellant/Robert, who suffered from back pain, was referred by his family physician to appellee, an orthopedic surgeon. When appellant's back pain did not improve with conservative treatment, Dr. Bryan performed a laminectomy with disc removal on April 3, 1979. When appellant's pain persisted, Dr. Bryan readmitted appellant on July 10, 1979, in order to ascertain the reason for appellant's continued discomfort. The tests and examinations performed led to a second surgery on appellant/husband on July 26, 1979. He was discharged one month later. Appellant subsequently filed suit against appellee and the hospital[1] where the treatment was rendered alleging Dr. Bryan was negligent in performing surgical procedures during both operations which exacerbated appellant's physical problems. Appellants also argued Dr. Bryan did not obtain husband's informed consent with respect to procedures performed during the July 26, 1979, surgery. A jury found in favor of appellee on both counts, and appellants' request for post-trial relief based solely on the informed consent issue was denied by Order dated July 5, 1990. Judgment was entered August 20, 1990, and this appeal followed.

Appellants contend the court erred by denying their motions for a new trial or a judgment n.o.v., arguing the verdict was contrary to the evidence in light of the fact there was no consent obtained for the nonemergency surgical procedures performed during the second operation. Specifically, appellants aver appellee performed two surgi-

---

1. Appellant's suit against Carlisle Hospital was discontinued by Order dated April 5, 1990.

cal procedures for which he did not obtain the patient's specific consent either orally or in writing; intradural removal of adhesions and the intradural injection of Depo–Medrol. In addition, appellants allege Dr. Bryan failed to discuss with appellants the risks associated with either procedure. Appellants argues the only way for appellee to avoid liability is to prove either the surgery was performed in an emergency context, or that waiting to furnish the information in question to the patient before proceeding with the surgery would have had a serious adverse effect to the material detriment of husband's health.

The sole duty of an appellate court upon an appeal from the trial court's denial of a motion for judgment n.o.v. or a new trial is to decide whether there was sufficient competent evidence to sustain the verdict, granting the verdict winner the benefit of every favorable inference to be drawn from such evidence. *Wenrick v. Schloemann–Siemag Aktiengesell–Schaft*, 523 Pa. 1, 564 A.2d 1244 (1989). A judgment n.o.v. may only be entered in a clear case where the facts are such that no two reasonable persons could fail to agree the verdict is improper. *Northwest Savings Assoc. v. Distler*, 354 Pa.Super. 187, 511 A.2d 824 (1986).

Given this standard of review, our next consideration is the law of informed consent.

Consent to medical treatment is valid if: [T]he physician disclosed all those facts, risks and alternatives that a reasonable man in the situation which the physician knew or should have known to be the plaintiff's, would deem significant in making a decision to undergo the recommended treatment ... the physician is bound to disclose only those risks which a reasonable man would consider material to his decision whether or not to undergo treatment.

*Moure v. Raeuchele*, 387 Pa.Super. 127, 563 A.2d 1217 (1989), citing *Cooper v. Roberts*, 220 Pa.Super. 260, 286

A.2d 647 (1979). In determining when a physician has breached his duty to his patient:

> [t]he standard of care is not what a reasonable medical practitioner would have done in the situation but whether the physician disclosed those risks which a reasonable man would have considered material to his decision whether or not to undergo treatment. *Festa v. Greenburg* 354 Pa.Super. 346 [353], 511 A.2d 1371, 1375 (1986).

*Moure, supra,* citing *Sagala v. Tavares,* 367 Pa.Super. 573, 578, 533 A.2d 165, 167 (1987), *alloc. denied,* 518 Pa. 626, 541 A.2d 1138 (1987).

█ Our prudent evaluation of the evidence necessitates a more thorough recitation of the testimony and facts than that set forth above. The preoperative plan for the July 26, 1979, surgery was to perform a decompression laminectomy and possible spinal fusion. Dr. Bryan testified he personally discussed this surgical plan and the attendant risks with the appellants and obtained their written authorization for the proposed procedures. Appellee testified the possible risks and complications that generally exist with regard to back surgery were included in the permit signed by appellants for the first surgery, and were discussed with appellants again prior to the second operation. The appellants both testified they were aware the same or similar risks as those encountered in the first operation also existed with regard to the second surgery (T.T. at 93–95, 142). As to reason for the second surgery and any proposed preoperative plan, appellant wife testified it was her understanding Dr. Bryan "hadn't gone far enough up in the spine. He was going to do that. He was going to remove scar tissue, any adhesions." (T.T., 4/18/90, p. 141.) Appellant husband testified likewise (*Id.* at 98–99).

Dr. Bryan testified that while husband was under anesthesia, he encountered significant scar tissue which was adherent to the dura and required dissection from both the dura and the nerve roots. Concededly, appellee could have decided to terminate the surgical procedure, wait until husband recovered from the anesthesia, discuss the problem

encountered, and then re-operate to correct the condition. Dr. Bryan, however, decided the best course of action for his patient, the appellant, was to open the dura, lyse the adhesions and, in order to prevent inflammation, inject Depo–Medrol to prevent further scarring and adhesions within the dura. Appellee testified the procedure's success rate was fifty per cent, but the operation's success rate had the adhesions been left in place was zero. Dr. Bryan testified had he not performed the aforementioned procedures, husband's symptoms would have been the same or worse than before the operation.

As noted in the trial court Opinion, appellants made no objection to the court's charge on informed consent which was in conformity with the definition of informed consent provided in the Definitions section of Title 40, Insurance:

> **"Informed consent"** ... That prior to the consent having been given, the physician ... has informed the patient of the nature of the proposed procedure or treatment and of those risks and alternatives to treatment or diagnosis that a reasonable patient would consider material to the decision whether or not to undergo treatment or diagnosis. No physician ... shall be liable for a failure to obtain an informed consent in the event of an emergency which prevents consulting the patient. *No physician ... shall be liable for failure to obtain an informed consent if it is established by a preponderance of the evidence that furnishing the information in question to the patient would have resulted in a seriously adverse effect on the patient or on the therapeutic process to the material detriment of the patient's health.*

40 P.S. § 1301.103 (emphasis added). When faced with the issue whether appellee erred by performing the objected to surgical procedures without appellant/Robert's specific consent, the jury apparently decided terminating the operation without freeing the adhesions would have resulted in his symptoms becoming worse. Accordingly, we find the evidence supported the jury's finding that terminating the operation and waiting until appellants' express consent for

the particular procedures could be obtained would have had a seriously adverse effect on husband to the material detriment of his health.

Appellants rely heavily on the holding in *Moure, supra.* We find, however, the facts in *Moure* to be distinguishable from those presently before this Court. The plaintiff/appellant in *Moure* consented only to exploratory or diagnostic surgery and the physician took it upon himself to perform corrective surgery. Here, appellants had agreed to corrective surgery, not merely an exploratory operation, and the appellee acted in his patient's best interests. We find not all exigencies can be predicted or discussed prior to an operation and doctors must be permitted to exercise sound medical judgment in dealing with these contingencies. To do otherwise would increase the danger to the patient.

For the foregoing reasons we find the trial court properly denied appellants' motions for judgment n.o.v. or new trial.

Judgment affirmed.