Zeid v. Castillo

*Gary I. Spivack,* for plaintiff.
*Denise L. Juliana,* for defendant.

SABO, *J.,* May 27, 1997—The instant proceeding involves a medical malpractice action by a patient, Christina Zeid, against a plastic surgeon, Jose Castillo, for scarring injuries attributed to the removal of tattoos following laser surgery. The complaint asserts a cause of action for medical malpractice integrating claims of negligence and lack of informed consent.

A nonsuit was entered in favor of the defendant following the conclusion of the plaintiff's case-in-chief. The court found that the plaintiff failed to meet the legal requisites for relief on either of these grounds in view of the expert testimony proffered by the plaintiff's expert witness. This appeal arises from the denial of the plaintiff's post-trial motions.

It is undisputed that Christina Zeid sought treatment for the removal of tattoos from the plastic surgeon, Jose Castillo, and that $CO_2$ laser surgery was performed. It was Ms. Zeid's contention that she never signed a consent form, that the doctor did not sufficiently advise her as to risks associated with this particular surgical method, and that she sustained scarring as a result of the procedure undertaken. The plaintiff controverted the defense's argument that she had previously applied a chemical salve herself that resulted in scarring prior to having consulted Dr. Castillo.

In resolving the evidentiary issues concerning the entry of a nonsuit, the court turns to the standard by which a motion for nonsuit must be adjudged, which is articulated in *Smith v. King's Grant Condominium,* 418 Pa. Super. 260, 265, 614 A.2d 261, 263 (1992), *affirmed,* 537 Pa. 51, 640 A.2d 1276 (1994), as follows:

"It has been long settled that a compulsory nonsuit can only be granted in cases where it is clear that a cause of action has not been established. The plaintiff

must be given the benefit of all favorable evidence along with all reasonable inferences of fact arising from that evidence. Any conflict in the evidence must be resolved in favor of the plaintiff."[1]

Guided by this standard, the court shall first address the cause of action for lack of informed consent since this is the primary theory upon which relief is predicated.

For purposes of adjudging informed consent cases, this Commonwealth has adopted what is termed the "prudent patient standard," which stands in contrast with the "reasonable physician/professional standard." *Festa v. Greenberg,* 354 Pa. Super. 346, 511 A.2d 1371 (1986). The evaluative criteria for determining whether consent is informed, which is considered from the perspective of the patient, has been explained as follows:

"In order for a consent to be considered informed, it must be shown that the patient was advised of those risks which a reasonable man would have considered material to his decision whether or not to undergo treatment." *Moure v. Raeuchle,* 529 Pa. 394, 404-405, 604 A.2d 1003, 1008 (1992).[2]

The determination as to what is material is a consideration left to the trier of fact, *id.* at 405, 604 A.2d at 1008, and an expert may not opine on the ultimate issue as to what a reasonable patient would do or consider under certain circumstances. *Sagala v. Tavares,* 367 Pa. Super. 573, 578-79, 533 A.2d 165, 168 (1987).

---

1. The defendant's motion for nonsuit was taken under advisement at the conclusion of the plaintiff's case-in-chief. The standard for dismissing the case after the entry of evidence by the defense does not differ even though other nomenclature is applied.

2. In the area of informed consent, the failure to disclose a risk is actionable regardless of whether the disclosure would or would not have resulted in the patient's refusal of medical treatment. *Gouse v. Cassel,* 532 Pa. 197, 202, 615 A.2d 331, 333 (1992).

Nevertheless, to establish materiality, it is incumbent upon the plaintiff to present expert testimony establishing both the nature of harm attendant to a medical procedure and probability of that harm occurring. *Moure, supra* at 394, 604 A.2d at 1008. The court may not dispense with the requirement for expert testimony as to the probability of a particular type of harm occurring since this factors into the determination as to whether it is a risk which a reasonable patient would consider in rendering a decision on medical treatment. *Sagala, supra* at 578, 535 A.2d at 167. Probability of risk has been referred to synonymously as frequency and magnitude of the risk. *Festa, supra* at 356, 511 A.2d at 1376.

In clarifying the distinction between those matters in which expert testimony is required in informed consent cases and those matters left to the trier of fact, the Superior Court, in *Neal by Neal v. Lu,* 365 Pa. Super. 464, 480, 530 A.2d 103, 112 (1987), opined:

"We concluded in *Festa* that even though the ultimate assessment of 'materiality' is for the fact-finder to make, expert testimony is nevertheless necessary on the important secondary issues that lie outside the knowledge of the layperson. (citations omitted) Thus, only an expert is able to explain the harms that can arise from the procedure in question and estimate the likelihood that those harms will occur. Only an expert, moreover, can identify viable alternative treatments and discuss the risks involved." *Overruled on other grounds by Gouse v. Cassel,* 532 Pa. 197, 615 A.2d 331 (1992) (that part of the decision requiring actual injury in informed consent cases has been abrogated).

In the case at bar, the plaintiff relied upon a plastic surgeon, Dr. Sherman Leis, as its expert witness. Dr. Leis was unable to sufficiently articulate the magnitude

of the risk and probability of harm of laser removal of tattoos as of the date that the procedure was undertaken. In response to questioning concerning the probability or likelihood of scarring following laser surgery, Dr. Leis proffered:

"I'm not familiar with any specific number I can give you from my readings on what percentage of scars occur from laser. I can only tell you from talking to other surgeons and from my own experience that scarring from the initial $CO_2$ laser, the plain $CO_2$ laser was relatively high." (Videotape trial deposition, Dr. Sherman Leis, at 44.)

Dr. Leis then attempted to clarify his answer, but again was unable to reasonably articulate the parameters of the risk:

"I would say certainly more than 1 percent, maybe as high as 5 or 10 percent, but somewhere in that range." (Videotape trial deposition, Dr. Sherman Leis, at 44.)

The ambiguous response posed by Dr. Leis poses significant problems for assessing the magnitude of the risk. At the far end of the range, the risk is extremely minimal. At the other end of the range, the risk is quite substantial. Dr. Leis' inability to more precisely assess the risk results in pure conjecture concerning probability, making his expert opinion in this regard entirely nonconclusive and highly speculative. Because of the doctor's equivocal response and the absence of any degree of medical certainty as to this aspect of his testimony, the court originally precluded it on consideration of a motion in limine by the defense.

The preclusion of the testimony certainly leaves a gap in the doctor's report concerning the magnitude of the risk. Even, however, were the court to consider this testimony as being admissible in the context of a motion for nonsuit, it would not suffice to establish

the probability of harm from the procedure. Absent expert testimony on this point, an essential criterion for a determination on materiality of risk is missing. Without expert testimony on probability in a complex medical malpractice case such as that presented, the plaintiff is unable to satisfy the legal requisites on an informed consent claim. Accordingly, on this issue alone, the entry of a nonsuit is warranted.

A nonsuit was properly granted for a second important reason. To sustain a cause of action in an informed consent case, a plaintiff must establish a causal link between the harm incurred and the negligent act. In other words, the plaintiff is required to establish that the injury suffered results from the undisclosed risk. *Maliszewski v. Rendon,* 374 Pa. Super. 109, 113, 542 A.2d 170, 172 (1988). Absent such causation, the plaintiff's case must fail.

Dr. Leis' opinions relating to causation falls far short of establishing the requisite causal nexus. To begin with, the plaintiff's expert admittedly is unable to ascertain what actually caused the plaintiff's scarring. He poses two possibilities, the laser treatment itself or post-treatment infection. (See videotape deposition, Dr. Sherman Leis, April 3, 1995 at 34-35.) On this issue, the plaintiff's expert concludes that it is *impossible* to determine if the defendant's overuse or misuse of the laser caused the scarring. The issue, therefore, becomes a matter of conjecture.

In recognition of the causation issues, the plaintiff postulates that regardless of whether the scarring emanates from the laser surgery or to events occurring post-surgery, it ultimately can be tied to the surgery. The court does not agree with this line of reasoning, especially in light of the protracted course of treatment undertaken by the plaintiff subsequent to laser treatment.

The inability to attribute the scarring to the actual laser surgery poses special difficulties in the context of an informed consent claim given the limited parameters for bringing an action under such ground. As a requisite for a cause of action predicated upon lack of informed consent, it is imperative that the injuries arise from a surgical or operative procedure. *Sinclair by Sinclair v. Block,* 534 Pa. 563, 633 A.2d 1137 (1993). If the procedure qualifies as non-surgical, the plaintiff may not prevail under this theory of relief. See *Malloy v. Shanahan,* 280 Pa. Super. 440, 421 A.2d 803 (1980) (a course of therapeutic treatment has been deemed to fall outside the parameters of the informed consent doctrine).

In the instant proceeding, the plaintiff underwent postoperative treatment, receiving a series of Triamcinolone injections which were intended to flatten the scarring that remained. The treatment was rendered after the time that laser surgery was performed. (See record, April 12, 1995 at 77, 79-80.) An issue was presented as to whether the plaintiff regularly underwent the series of injections or missed a month of treatment.[3] In other words, the trier of fact was presented with questions concerning the propriety and adequacy of the postoperative treatment. Scarring may or may not have been entirely attributable to this factor alone.

No action would lie if the disfiguring scarring that is alleged is attributable to the postoperative procedures as opposed to the actual laser treatment. By virtue of the fact that the plaintiff's expert is unable to make

---

3. While Dr. Castillo attributes the scarring to a chemical salve which he claims that the plaintiff improperly applied prior to seeking treatment from him, this has not been considered in the context of the motion for nonsuit since the court is constrained to view the evidence in the light most favorable to the plaintiff.

any determination of this issue, the matter becomes entirely speculative. Given the events transpiring subsequent to the plaintiff's surgery and the plaintiff's inability to establish a causal nexus between the laser surgery and the scarring through expert testimony, the court is constrained to enter a nonsuit on this ground as well.

The plaintiff's second theory for relief, which is predicated on negligence grounds, is even more tenuous. In his case-in-chief, the plaintiff did not link any specific act of negligence or deviation from the standard of care with her scarring condition.

This is quite apparent given Dr. Leis' complete inability to draw a causal connection between the actual application of the laser and the scarring. See *Cohen v. Albert Einstein Medical Center,* 405 Pa. Super. 392, 399, 592 A.2d 720, 723 (1991) (the degree of medical certainty necessitated to establish causation is not presented through speculation in the form of conclusions to the effect that alleged negligence "possibly," "could have," or "could very properly account for," the result. Not even words to the effect that it was "very highly probable" that it caused the result suffices).

As cogently explained by our courts, "if the plaintiff's . . . expert cannot form an opinion with sufficient certainty so as to make a [professional] judgment, there is nothing on the record with which a [fact-finder] can make a decision with sufficient certainty so as to make a legal judgment." *Id.* at 400, 592 A.2d at 723.

In view of the sufficiency issues associated with plaintiff's negligence claim, the plaintiff seemingly conceded this issue and predominantly focused upon the informed consent claim at the time that the nonsuit motion was litigated before this court. The entry of a nonsuit on the negligence claim was properly granted.

Based upon the reasons set forth above, the trial court's evidentiary rulings should be sustained.