**Jacqulynn M. McSORLEY, Appellant**

v.

**Randolph B. DEGER, M.D., Albert El–Roeiy, M.D., Edward R. Russell, M.D., General Surgery Associates, Health Access Network, Crozer Chester Medical Center, Appellees.**

Superior Court of Pennsylvania.

Argued March 22, 2006.

Filed July 31, 2006.

---

Sharon Cherry, Media, for appellant.

John P. Shea, Philadelphia, for Deger, appellee.

Frank A. Gerolamo, III, Philadelphia, for Russell, appellee.

BEFORE: TODD, BENDER, and GANTMAN, JJ.

OPINION BY TODD, J.:

¶ 1 In this medical malpractice and informed consent case, Jacqulynn M. McSorley appeals the judgment entered in favor of Randolph B. Deger, M.D., Albert El–Roeiy, M.D., Edward R. Russell, M.D., General Surgery Associates, Health Access Network, and Crozer Chester Medical Center following the jury verdict against her. We affirm.

¶ 2 The trial court provided the following summary of the factual background of this case:

This is a medical malpractice action stemming from a surgical procedure that occurred on January 22, 1997. On that date [McSorley] entered [Appellee] Crozer Chester Medical Center under

the care of [Appellees] Randolph B. Deger, M.D. and Albert El–Roeiy, M.D. for a diagnostic laparoscopy to evaluate a cystic right ovary. [McSorley] underwent a laparotomy, which was performed by Dr. Deger and Dr. El–Roeiy. During this procedure, Dr. Deger noted [McSorley's] terminal ileus to appear markedly abnormal and Dr. Deger therefore called for an intraoperative consult with [Appellee] Dr. Edward Russell.

Dr. Russell observed [McSorley] had a very abnormal small bowel that showed severe distortion, puckering, and alternating thickening and thinning. Dr. Russell made the decision to remove the abnormal portion of [McSorley's] small bowel. In Dr. Russell's opinion, the abnormality could have been caused by cancer, endometriosis, Crohn's disease, or a congenital duplication. A pathologist reviewed a specimen removed in surgery and described the specimen as grossly abnormal piece of small intestine that was 31 cm long with numerous serosal adhesions that was alternately narrowed and dilated along its entire length. The pathologist subsequently determined that the appearance of [McSorley's] bowel tissue was caused by scar tissue. . . .

After her discharge from the hospital, [McSorley] developed chronic diarrhea and other related complaints, which she contends, are a result of the bowel resection performed by [Appellee] Dr. Russell. [McSorley] alleges that medications prescribed for the treatment of her diarrhea were either unhelpful or had unacceptable side effects.

(Trial Court Opinion, 9/26/05, at 1–2.)

¶ 3 McSorley sued Appellees in June 1998, alleging battery, negligence, lack of informed consent, and vicarious liability. Dr. El–Roeiy, Crozer Chester Medical Center, and Health Access Network filed a motion for summary judgment, which was granted on May 18, 2000, and they were dismissed from the case. In response to his third motion for summary judgment, Dr. Deger was dismissed from the case by order dated January 4, 2005. The basis for the grant of summary judgment with respect to each of these then-defendants was McSorley's failure to produce expert testimony.[1]

¶ 4 The case proceeded to trial against Dr. Russell and General Surgery Associates, on theories of negligence and battery. After a three-day trial in January 2005, the jury found in favor of Dr. Russell and General Surgery Associates. The trial court denied McSorley's post-trial motions, and this timely appeal followed.

¶ 5 On appeal, McSorley presents the following issues for our consideration, which we have reordered:

1. Did the lower court err in denying [McSorley's] motion for a directed verdict against Appellee Russell and General Surgery Associates?

2. Did the lower court err in dismissing [McSorley's] case against Appellees Deger, El–Roeiy, Crozer Chester Medical Center and Health Access Network on motions for summary judgment?

3. Did the lower court err in its instruction to the jury regarding informed consent?

4. Did the lower court err in refusing to allow [McSorley] to cross-examine Appellee Russell on the scope of the consent?

(Appellant's Brief at 6.)

■ ¶ 6 McSorley first asserts that the trial court erred in denying her motion for

1. As a discovery sanction, McSorley was precluded from presenting expert testimony against Dr. Deger.

a directed verdict against Dr. Russell and General Surgery Associates on the issue of informed consent. She asserts that, as a matter of law, Dr. Russell exceeded the scope of her surgical consent when he performed the bowel resection, that this procedure was an unauthorized extension of the diagnostic laparoscopy. We disagree.

¶ 7 Our standard of review with respect to the denial of a directed verdict is as follows:

> [W]e may only ask whether the trial court's decision was an abuse of discretion or an error of law that controlled the outcome of the case. The trial judge, however, may only grant a directed verdict motion where "the facts are clear and there is no room for doubt." In so determining, the trial court "must consider the facts in the light most favorable to the nonmoving party and must accept as true all evidence which supports that party's contention and reject all adverse testimony."

*Faherty v. Gracias*, 874 A.2d 1239, 1246 (Pa.Super.2005) (citations omitted).

¶ 8 Our Supreme Court has explained the doctrine of informed consent and its related cause of action as follows:

> In *Smith v. Yohe*, 412 Pa. 94, 194 A.2d 167 (1963), we stated: "The principles of law applicable to this phase of the litigation are clear. Such principles are: (a) where a patient is mentally and physically able to consult about his condition, in the absence of an emergency, the consent of the patient is 'a prerequisite to a surgical operation by his physician' and an operation without the patient's consent is a technical assault; (b) the burden is on plaintiff to prove 'that the operation performed, or substantially that operation, was not authorized by him.'" *Id.* at 106, 194 A.2d at 174 (citations omitted). Later we held that for a

consent to be effective it must be informed and knowledgeable. *See Gray v. Grunnagle*, 423 Pa. 144, 223 A.2d 663 (1966).

> In order for a consent to be considered informed it must be shown that the patient was advised of "those risks which a reasonable man would have considered material to his decision whether or not to undergo treatment." *Sagala v. Tavares*, 367 Pa.Super. 573, 578, 533 A.2d 165, 167 (1987) *alloc. denied*, 518 Pa. 626, 541 A.2d 1138 (1988). The determination of what is material is a jury question, and in making that determination the jury must be supplied with expert information as to the nature of the harm attendant to the procedure, and the probability of that harm occurring. Thereafter, the jury must determine whether the type of harm and the probability of its occurrence is information which a reasonable patient would consider in deciding whether to undergo the medical procedure. *Id.* at 578, 533 A.2d 165, 533 A.2d at 167; *see also, Gray v. Grunnagle, supra.*

> In order for a plaintiff to state a cause of action under this theory he or she need not establish that the unauthorized surgery was done negligently. Indeed, said surgery could have been done perfectly, and could even have had a beneficial effect on the patient, yet a cause of action could still exist; for it is the very conduct of the unauthorized procedure which constitutes the tort.

*Moure v. Raeuchle*, 529 Pa. 394, 404–05, 604 A.2d 1003, 1008 (1992).

¶ 9 Herein, although Dr. Deger discussed the laparoscopy procedure as it related to McSorley's ovary, and any possible malignancy of the ovary, it is undisputed that McSorley was not advised of the risks of or alternatives to the bowel

resection that was performed—indeed, that procedure was unanticipated by the parties. However, the consent form she signed prior to surgery contained the following paragraph:

4. It has been explained to me that during the course of the operation, unforeseen conditions may be revealed that necessitate an extension of the original procedure(s) or different procedure(s) than those set forth in paragraph 1 [describing diagnostic laparoscopy]. I therefore authorize the surgeon/physician named above, or his or her designee perform such surgical or other procedures as are necessary and desirable in the exercise of his or her professional judgment. The authority granted under this paragraph (4) shall extend to treating all conditions that require treatment and are not known by the above named physician, or his or her associates, at the time the operation is commenced.

(Consent Form (Exhibit A to Plaintiff's Answer to Defendants' El–Roeiy, Crozer Chester Medical Center and Health Access Network's Motion for Summary Judgment filed 4/13/00), 1/17/97, at ¶ 4.) Dr. Russell argues that this paragraph provided explicit consent to perform the bowel surgery, which he determined was necessary in his professional judgment.[2]

¶ 10 McSorley counters that "[b]ecause consent to an operation is contractual in nature, in order for there to be a valid consent, it must be clear that both parties understand the nature of the undertaking and what the possible as well as expected results might be", adding that "[i]n this case it is indisputable that [she] was not advised of the nature of the operation ... (bowel surgery)" or "the risks of the oper-

ation" or "alternative courses of treatment." (Appellant's Brief at 27–28.) Because it was conceded by Dr. Russell that the bowel surgery was not an emergency, McSorley asserts that consent was not given for the bowel surgery as a matter of law. (*Id.*)

¶ 11 McSorley refers to her trial testimony wherein she testified that, as a nurse in a hospital setting, she understood paragraph 4 as referring to treating life-threatening conditions, not "to hav[ing] anybody come in and use their own judgment to do another procedure that I didn't approve or authorize." (Appellant's Brief at 29 (quoting N.T. Trial, 1/24/05, at 159).) She also notes her testimony regarding the various times prior to surgery she emphasized her desire for a conservative surgery, and that she instructed Dr. Deger that "if he found anything else, ... wake me up" and "let me discuss my options." (Appellant's Brief at 28–29 (quoting N.T. Trial, 1/24/05, at 145) (emphasis omitted).)

¶ 12 She asserts that Dr. Deger understood that her consent was limited to a determination of a malignancy in the ovary, citing his testimony wherein he conceded: "For this particular circumstance it was pending an evaluation of the ovary, determining whether or not it was malignant or not and then proceeding, as I had discussed, based on the consent form if it was malignant." (Appellant's Brief at 29–30 (quoting N.T. Trial, 1/25/05, at 56–57) (emphasis omitted).) McSorley argues that, as the consent given to Dr. Deger was thus limited, *a fortiori*, it was limited for Dr. Russell. (Appellant's Brief at 31 ("Unbeknownst to Appellee Russell, Appellant had specifically limited her authorization. It was Appellee Russell's duty to

**2.** McSorley's claims against General Surgery Associates rise and fall with her claims against Dr. Russell, as General Surgery Associates is implicated by way of its agency re-

lationship with Dr. Russell. Thus, for simplicity's sake, we discuss this issue only with respect to Dr. Russell.

assure himself that the Appellant had authorized this non-emergency surgery [the bowel resection].").)

¶ 13 In response to McSorley's argument that Dr. Deger knew that the scope of the operation was dependent upon a malignancy determination, Dr. Russell notes that Dr. Deger's testimony, in part, contradicts this. Dr. Deger testified that his understanding of her desire for a "conservative" surgery was related to preserving her chance for future fertility. (N.T. Trial, 1/25/05, at 154–155.) Furthermore, Dr. Russell notes that, even if McSorley's consent was limited to a malignancy determination, he testified that he performed the bowel resection, in part, because he could not rule out a malignancy. (Brief of Dr. Russell and General Surgery Associates at 17 n. 2; N.T. Trial, 1/25/05, at 177–78.)

¶ 14 In large measure, however, Dr. Russell relies on paragraph 4 of the consent form as having provided the consent necessary for the bowel resection. In this regard, we find *Moure v. Raeuchle, supra,* to be instructive. Therein, the patient underwent a laproscopy to determine the cause of her infertility and, prior to the procedure, signed a consent form containing language nearly identical to paragraph 4 above. The surgeon found the patient's fallopian tubes severely damaged, likely rendering her infertile, and thus proceeded to attempt to salvage and repair the one fallopian tube that was remediable. The patient sued, arguing that this repair surgery was unauthorized because she was not informed of its risks and consequences, and that it was unnecessary. On appeal, the Supreme Court rejected this argument:

This theory is sound in the abstract; however, the facts of record do not substantiate it. The evidence, when viewed in the light most favorable to the verdict winner, reveals that appellant conducted a lengthy interview with appellee prior to the operation. During the course of the interview, appellant testified that appellee granted him permission to take such remedial steps as he might find necessary during the operation. Moreover, appellee signed a Consent Agreement by which appellant was "authorized and requested" by appellee to "perform such surgical procedures as are necessary and desirable in the exercise of professional judgment. [Moreover] the authority granted ... [extended] to treating all conditions that require treatment and are not known to [appellant] at the time the operation is commenced." Consent Agreement Paragraph 3.

*Moure,* 529 Pa. at 406, 604 A.2d at 1009 (footnote omitted). The Court held that it was a jury question whether the doctor's actions were within the terms of the consent provided by the patient, and that there was no basis to conclude, as a matter of law, that the doctor exceeded the scope of his consent.

¶ 15 The same is true herein. In light of paragraph 4 of the consent form McSorley signed prior to surgery, the testimony of McSorley and Dr. Deger regarding her consent, and the testimony of Dr. Russell regarding the justification for the bowel surgery, including his concern about a potential malignancy in the bowel, we conclude it was for the jury to determine whether Dr. Russell's actions were within the consent provided by McSorley.[3] View-

---

3. McSorley cites *Millard v. Nagle,* 402 Pa.Super. 376, 587 A.2d 10 (1991) (*en banc*), aff'd, 533 Pa. 410, 625 A.2d 641 (1993), in support of her position. While this case emphasizes that, absent an emergency situation, "a physician does not have the authority to extend surgical procedures to areas outside the initial consent unless additional consent was ex-

ing the record in the light most favorable to Dr. Russell, as the non-moving party, we cannot conclude, as a matter of law, that Dr. Russell exceeded the scope of McSorley's consent. Thus, we find the trial court properly rejected McSorley's motion for a directed verdict.

¶ 16 Next, McSorley asserts the trial court erred in granting the summary judgment motions of Dr. Deger, Dr. El–Roeiy, Crozer Chester Medical Center, and Health Access Network because she failed to produce expert medical testimony to support her claims against them. We find no error.

¶ 17 Initially, we note that our standard of review of an order granting or denying a motion for summary judgment is well established:

We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Pappas v. Asbel,* 564 Pa. 407, 418, 768 A.2d 1089, 1095 (2001) (citations omitted).

¶ 18 McSorley sued Appellees on claims of negligence, vicarious liability, battery, and lack of informed consent. We first address McSorley's negligence claims, and the related vicarious liability claims.

¶ 19 In order to recover on a medical malpractice claim, a plaintiff must prove that:

(1) the physician owed a duty to the patient; (2) the physician breached that duty; (3) the breach of duty was the proximate cause of, or a substantial factor in, bringing about the harm suffered by the patient[;] and (4) the damages suffered by the patient were a direct result of that harm.

*Eaddy v. Hamaty,* 694 A.2d 639, 642 (Pa.Super.1997) (citing *Mitzelfelt v. Kamrin,* 526 Pa. 54, 62, 584 A.2d 888, 891 (1990)). In addition, to recover, a plaintiff "must offer an expert witness who will testify 'to a reasonable degree of medical certainty, that the acts of the physician deviated from good and acceptable medical standards, and that such deviation was the proximate cause of the harm suffered.'" *Id.* (quoting *Mitzelfelt,* 526 Pa. at 62, 584 A.2d at 892)).

¶ 20 The alleged negligence of Dr. Deger, and Dr. El–Roeiy, and thus the vicarious liability of Crozer Chester Medical Center and Health Access Network, concerns McSorley's complaint that they allowed Dr. Russell to conduct allegedly unauthorized bowel surgery on her. However, we agree with the trial court that

[i]n this case, it would not be within the knowledge of the average layperson to identify when the need for a consult would arise in a surgical procedure. Specifically, a layperson cannot be expected to know when the need for a bowel resection would present itself or whether such a procedure could result in

---

pressly obtained, or was implied," *id.* at 388, 587 A.2d 10, 587 A.2d at 15, in fact, the case concludes that the issue of consent, where

disputed, *is a jury question, id.* Our conclusion herein is thus consistent with *Millard.*

injuries such as those alleged by the plaintiff.

(Trial Court Opinion, 9/26/05, at 4.) Thus, expert testimony was clearly required to prove her negligence and vicarious liability claims, and thus we find no error in the grant of summary judgment on these counts.[4]

¶ 21 With respect to the battery and informed consent claims, we find that summary judgment was likewise properly granted, because we conclude that expert testimony was required in order for McSorley to prove a lack of informed consent, and thus that she suffered a battery. To prove lack of informed consent, expert testimony is not required to assess whether certain risks would be material to a patient; it is, however, required to establish the nature of the risks of the procedure, and their likelihood. *Moure,* 529 Pa. at 405, 604 A.2d at 1008; *see also Festa v. Greenberg,* 354 Pa.Super. 346, 357, 511 A.2d 1371, 1377 (1986) (in informed consent cases, expert testimony is necessary "to establish the existence, magnitude and other relevant scientific characteristics of the risks of a recommended medical procedure and viable alternatives", but not the materiality of those risks to the patient). McSorley provided no such expert testimony.

¶ 22 Moreover, expert testimony was required to assess whether Dr. Deger and Dr. El–Roeiy, and thus Crozer Chester Medical Center and Health Access Network, in allowing Dr. Russell to perform the bowel resection, acted in accordance with paragraph 4 of the consent form—that is, whether their observation of the abnormal bowel necessitated their consulting with Dr. Russell. *Cf. Moure,* 529 Pa. at 406–07, 604 A.2d at 1009 (discussing use of expert testimony to prove that surgery was "necessary" under similar consent language). As the trial court noted, the necessity for such a consult would not be within the knowledge of the average layperson. (*See* Trial Court Opinion, 9/26/05, at 4.) Accordingly, we find no error in the trial court's grant of summary judgment in favor of Dr. Deger, Dr. El–Roeiy, Crozer Chester Medical Center, and Health Access Network based on McSorley's failure to produce expert testimony.

¶ 23 In her third issue, McSorley asserts that the trial court erroneously charged the jury on informed consent. We review a challenge to a jury instruction "to determine if the trial court abused its discretion or committed an error of law. We will not grant a new trial because of an erroneous jury instruction unless the jury charge in its entirety was unclear, inadequate, or tended to mislead or confuse the jury." *Fragale v. Brigham,* 741 A.2d 788, 790 (Pa.Super.1999) (citation omitted). In reviewing a trial court's charge to the jury, an appellate court must not take the challenged words or passage out of context, but must look at the charge in its entirety. *Jeter v. Owens–Corning Fiberglas Corp.,* 716 A.2d 633, 635 (Pa.Super.1998). We have said that a "trial judge has wide latitude in his or her choice of language when charging a jury, provided always that the court fully and adequately conveys the applicable law." *Wagner v. Anzon, Inc.,* 453 Pa.Super. 619, 634,

---

**4.** We reject McSorley's claim that, rather than medical negligence, her claims concern simple negligence, obviating the need for expert testimony. (*See* Appellant's Brief at 22.) Contrary to her claims, the negligence counts alleged in the complaint against Dr. Deger and Dr. El–Roeiy, and thus the vicarious liability claims against Health Access Network and Crozer Chester Medical Center, assert violations of the "appropriate standard of medical care," (Amended Complaint, 1/20/99, at ¶¶ 23, 34), very clearly necessitating expert testimony.

684 A.2d 570, 577 (1996) (internal quotation marks omitted).

¶ 24 McSorley argues that "[t]he lower court never explained to the jury that informed consent requires that the patient be advised of the nature of the operation, the risks associated with that operation and it requires that the patient be advised of the alternative courses of treatment." (Appellant's Brief at 33.) She further argues that, in instructing the jury that they should consider whether Dr. Russell "had either express or implied consent to proceed with the surgery" (N.T. Trial, 1/26/05, at 198), the court erred "because the evidence in the record clearly established that Appellant never gave Appellee Deger express or implied consent to bowel surgery." (*Id.*)

¶ 25 On this latter point, we find no error because, for the reasons expressed in our earlier discussion of McSorley's informed consent issue, we find the jury was properly allowed to determine the scope of Dr. Russell's consent, and clearly rejected McSorley's contention that the evidence showed she did not consent to bowel surgery.

¶ 26 Moreover, we find no error in the trial court's charge on the issue of informed consent generally. The court explained the concept of informed consent, including the requirement that a patient be fully informed of the risks and alternatives to surgery, prior to surgery. (*See* N.T. Trial, 1/26/05, at 198–200.) However, the trial court correctly explained that this case concerned consent for an unanticipated condition:

> However, in this case, that, this issue occurred, obviously, or this issue occurs obviously interoperatively .... [W]here consent is given for a particular surgical procedure and an unanticipated condition is found during the surgery, absent an emergency situation, a physician

must have either express or implied consent of the patient to extend the surgery. A physician does not have the authority to extend surgical procedures to areas outside the initial consent unless additional consent was either expressly obtained or was implied as a result of the circumstances in the case, or again, unless an emergency situation occurred.

> \*     \*     \*     \*     \*     \*

> Now, a physician who performs an invasive procedure without either the express or implied patient's informed consent, has committed a battery on the patient, and is liable for any injuries caused by that battery, even though the procedure is performed with proper skill and care....

> ... [S]o what you have to do is weigh and evaluate the evidence in this case, and determine from all of the evidence was there an express or implied consent for Dr. Russell to go forward with the operation that he did ....

(N.T. Trial, 1/26/05, at 200–01.) Under the circumstances of this case, we find no error in this charge.

¶ 27 Finally, McSorley asserts that the trial court erred in refusing to allow her to cross-examine Dr. Russell on the scope of the consent. We find this issue to be waived. While in her court-ordered concise statement of matters complained of on appeal, filed pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, McSorley complains that Dr. Russell should not have been allowed to testify as to his understanding of the consent form, she does not assign as error the permitted scope of her cross-examination of him. Thus, this claim is waived. *See Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306 (1998) (claim waived where appellant fails to include it in court-

ordered 1925(b) statement); *Commonwealth v. Castillo*, 585 Pa. 395, 888 A.2d 775 (2005) (reaffirming bright-line waiver rule established in *Lord* ).

¶ 28 For all the forgoing reasons, we affirm the judgment entered below.

¶ 29 Judgment AFFIRMED.