542 A.2d 170

**Anthony MALISZEWSKI and Josephine Maliszewski, H/W, Appellants,**

v.

**Dr. Roberto RENDON, Dr. Gordon Van Den Noort, Dr. Albert Wagman.**

Superior Court of Pennsylvania.

Argued March 1, 1988.

Filed June 6, 1988.

Arnold J. Wolf, Philadelphia, for appellants.

Mary C. Driscoll, Norristown, for appellees.

Before BROSKY, BECK and CERCONE, JJ.

BROSKY, Judge:

This is an appeal from an order denying appellants' motion for a new trial. Appellees were granted summary judgment at the close of appellants' case, the trial court finding that appellants had failed to prove an essential element of their case.[1]

Appellants present six issues for our consideration: (1) whether their informed consent case was properly dismissed for failure to provide expert testimony asserting appellants had suffered injury additional to the back surgery itself; (2) whether a non-surgeon physician was properly dismissed where he provided inaccurate information regarding the probability of success of the proposed back surgery; (3) whether the lower court erred in excluding portions of medical records because they contained medical opinions; (4) whether the trial court erred in preventing cross-examination of the defendants by reference to an authoritative text; (5) whether the trial court erred in limiting cross-examination as to the cause of appellants' post-surgical back pain; and (6) whether the trial court erred in denying a requested continuance. Upon consideration of arguments advanced by both parties, we affirm the order appealed from.

In the last week of April of 1977, appellant, Mr. Maliszewski, injured his head and back at work. In the first week of

1. We note that appellee had moved for a "summary judgment" which motion was ultimately granted. However, the nature of the motion was essentially that of a compulsory non-suit. For purposes of considering timeliness of appeals we must look beyond the title to the contents and substance of the motion in order to characterize it. See, *Abramson v. Commonwealth, Public Utility Commission*, 489 Pa. 267, 414 A.2d 60 (1980), and *Fortune/Forsythe v. Fortune*, 352 Pa.Super. 547, 508 A.2d 1205 (1986). Thus, we find this appeal to have been properly perfected.

May he experienced a foot drop evidenced by loss of sensation and control. At the recommendation of his family physician he consulted Dr. Wagman, a neurologist, on June 21, who recommended hospitalization. After further consultation with his family physician appellant was admitted to Abington Memorial Hospital on June 23, and placed under the care of Dr. van den Noort, a neurosurgeon. Following an examination Dr. van den Noort concurred with Dr. Wagman's earlier diagnosis of an intervertebral herniated disk at L4–5, and ordered a myelogram and nerve conduction studies to confirm his findings.

The myelogram results were abnormal indicating a small defect at L4–5 on the right; however, they did not confirm the diagnosis of a herniated disk. The electromyogram demonstrated electrical abnormality in the muscles supplied by a nerve root in the lumbar spine. No impairment was present in the peripheral nerves, ruling out peroneal nerve palsy.

Based on Mr. Maliszewski's clinical presentation, examination and the testing results, Dr. van den Noort determined that surgery was advisable to explore and remove any diseased disks, as any delay would decrease the chances of appellant obtaining a return of power to his right foot. However, Dr. van den Noort still perceived the probability of regaining use of the foot as remote. Appellant consented to surgery to prevent the worsening of his foot paralysis.

During surgery Dr. van den Noort excised an abnormal disk located at the fourth and fifth lumbar vertebrae. Thereafter, according to medical records, Mr. Maliszewski's foot drop steadily improved and ultimately disappeared by August of 1977, yet reoccurred a few months later.

Appellant brought suit against appellees alleging, primarily, a lack of informed consent. Trial was scheduled but continued twice. After the second continuance in October of 1986, it was mutually agreed to list the case for early February of 1987. Official notice of the trial date was sent on December 19, 1986. However, appellant requested a continuance due to the unavailability of his expert approxi-

mately two weeks prior to the scheduled trial. This request was denied and appellant went to trial without benefit of an expert witness. Appellant testified that, at the time of admission to the hospital, he did not suffer from back pain. He further testified that after surgery he suffered a great deal of back pain, which has not diminished. His foot paralysis, according to his testimony, remained unchanged for a couple of months after surgery, but greatly improved almost overnight at that time. However, several months later he suffered a recurrence of the paralysis. He was later diagnosed as having peroneal palsy, which had been ruled out by appellees prior to surgery. Appellant called Drs. van den Noort and Rendon in his case in chief. Dr. Van den Noort testified that they were unable to come to a clear cut diagnosis of a herniated disk and that he had proceeded to surgery on a "strong clinical hunch." He also indicated that he felt that there was only a remote chance appellant would regain use of the foot due to the amount of time which had passed from the onset of the paralysis, but that it was almost inconceivable that his condition could worsen by undergoing surgery. Dr. van den Noort maintained his belief that the diagnosis was correct and indicated that he found and removed a "bulging disk" at the suspected point of trouble, L4–5.

Although appellants' complaint listed several counts, they abandoned at time of trial any theory that the surgery was performed below medical standards. They went to trial on a stance that appellant would not have had the surgery performed had he been properly informed of the risks and the low probability of success. He also testified that he had been told, contrary to the truth, that there was a high likelihood of success from the operation. Appellant sought damages for the sustaining of severe back pain, and incapacitation due to pain, allegedly suffered solely as a result of the back surgery. Just prior to trial the court was asked to rule upon an outstanding motion for summary judgment. The court declined to do so at that time without prejudice to appellees to renew the motion at the close of appellants' case. The central issue addressed the lack of expert testi-

mony tying appellant's back pain to the surgery. Appellants maintained a position that they were not required, prior to sending the case to the jury, to show any injury additional to undergoing the surgery itself. At the close of appellants' case, the motion was renewed and appellants' case was dismissed.

We are called upon to once again discuss the necessity or lack of necessity of expert medical testimony in informed consent cases. In *Festa v. Greenberg*, 354 Pa.Super. 346, 511 A.2d 1371 (1986), this court issued an opinion designed to help clarify when expert testimony was needed in informed consent cases. We explained in *Festa* that, although expert testimony was not required to establish the materiality of risks, it was required to establish the existence of risks, the existence of alternative treatments and the feasibility of these alternatives in the patient's case. 511 A.2d at 1377. In *Jozsa v. Hottenstein*, 364 Pa.Super. 469, 528 A.2d 606 (1987), we clarified this requirement even further stating that once medical testimony establishes a risk of which the patient was not informed and which is experienced after surgery, it is for the jury to determine whether the omission was material to an informed consent. In neither *Festa* nor *Jozsa* did we explicitly discuss the need for expert testimony to establish causation: we do so today.

■ It goes without citation that as a part of a tort action the plaintiff must prove that the injury claimed to have been sustained and for which recovery is sought was caused by the tortious act or force of the tortfeasor. With regard to claims of physical injury or impairment, expert medical testimony is necessary to establish the causal nexus of the injury to the tortious conduct in those cases where the connection is not obvious. This is due to the complicated nature of the medical field which is beyond the knowledge of the average juror. *Simmons v. Mullen*, 231 Pa.Super. 199, 331 A.2d 892 (1974). We cannot conclude that this requirement is changed at all for informed consent cases.

■ As was pointed out in *Festa, Cooper v. Roberts*, 220 Pa.Super. 260, 286 A.2d 647 (1971), merely exempted plain-

tiffs from presenting expert testimony to establish the materiality of the risks. *Cooper* does not exempt plaintiffs from providing expert testimony as to all aspects of the case when it would otherwise be necessary. The *Jozsa* case, supra, at least implicitly, recognizes the necessity for finding a causal connection between the lack of informed consent and the suffering of the injury as well as the distinct possibility that expert testimony will be required to establish it. We stated:

> ... once expert testimony establishes the existence of an undisclosed risk of a recommended medical procedure ... it is the role of the jury to decide whether that type of harm *if it occurs,* is a risk which a reasonable patient would consider in deciding on whether to undergo or reject the procedure.

(Emphasis added). We also stated in *Neal by Neal v. Lu,* 365 Pa.Super. 464, 530 A.2d 103 (1987), that it was essential for recovery to show that:

> ... as a result of the recommended treatment, the patient actually suffers an injury the risk of which was undisclosed, or the patient actually suffers an injury that would not have occurred had the patient opted for one of the undisclosed methods of treatment.

Consequently, in order for appellant to have recovered for the disabling back pain he allegedly suffers, he was required to prove that this type of back pain was an undisclosed risk of the surgery he underwent and that it was caused by the surgery. This he has failed to do.

Although appellant testified that he was not experiencing back pain upon seeking treatment from appellees, there was much evidence contradicting this fact. Appellant presented no medical expert testimony showing a causal connection between the surgery and the back pain he complained of. Appellant did attempt to show, through appellee van den Noort's testimony, that there existed a possibility that one could sustain scarring at the nerve roots which in turn is capable of producing pain. However, Dr. van den Noort did not testify that appellant's pain was caused by such scar-

ring, or even that appellant had experienced scar formation. Dr. van den Noort did testify, however, that he could not conceive that the back surgery appellant underwent could worsen the back pain he had been experiencing prior to surgery. Appellant apparently had hoped to introduce records of his medical expert which would have attributed appellant's pain to scarring. However, these reports were properly refused admission by the trial court as they contained medical opinions and diagnoses and as the doctor was unavailable to testify. *See Williams v. McClain,* 513 Pa. 300, 520 A.2d 1374 (1987). Consequently, we must find that appellant failed to carry his burden as to the issue of causation. The record clearly reveals that the cause of appellant's back pain was a disputed issue and far from obviously caused by the back surgery itself. Without medical expert testimony establishing the causative element, any jury award would have been speculative and improper. For the above reasons, we affirm the order appealed from.[2]

Order affirmed.

BECK, J., concurs in the result.

---

**2.** We find appellant's remaining issues either rendered moot by our determination of the first or adequately treated in the opinion of the trial court.