## Pollak v. Holencik

C.P. of Dauphin County, no. 4557 S 1997.

*Clark DeVere,* for plaintiff.
*Timothy J. McMahon,* for defendant.

KLEINFELTER, *P.J.*, August 9, 2000—Before the court is the defendant, Mark P. Holencik D.O.'s, motion for post-trial relief. The motion follows a jury trial conducted January 24-27, 2000, and a verdict of $511,443 in favor of plaintiff, Corrina B. Pollak.

Prior to trial, Pollak's claims against Dr. Holencik were distilled to three counts: (1) professional negligence; (2) battery (lack of informed consent); and (3) negligent misrepresentation. Also prior to trial, Pollak agreed to dismiss Dickinson College as a party.

The verdict form (with special interrogatories) separately addressed the three counts. On Count 1, the jury concluded that Dr. Holencik was negligent and that his negligence was a substantial factor in bringing about Pollak's harm. On Count 2, the jury found that Dr. Holencik failed to obtain the informed consent of Pollak prior to surgery and that her lack of informed consent was a substantial factor in her decision to undergo surgery. On Count 3, the jury found that Dr. Holencik negligently misrepresented the period of Pollak's recovery and her ability to play lacrosse in the spring of 1996. The jury concluded that such misrepresentation was a substantial factor in inducing Pollak to undergo surgery in October of 1995.

As far as damages, the jury was given a general instruction that, if liability were established on Counts 1 or 2, they could award: past medical expenses, pain and suffering, loss of life's pleasures and disfigurement. If liability were found as to Count 3 only, the jury was limited to the category of loss of life's pleasures only.

As noted, the jury found liability on all counts and apportioned damages as follows:

| | |
|---|---|
| Past medical expenses: | $11,443 |
| Pain and suffering: | 150,000 |
| Loss of life's pleasures: | 75,000 |
| Disfigurement: | 275,000 |
| Total: | $511,443 |

Dr. Holencik's motion for post-trial relief contains a motion for new trial and a motion for remittitur. The motion for new trial raises five issues: (1) the court erred in failing to charge the jury on the alleged contributory negligence of Pollak; (2) the court erred in allowing the jury to consider the count of informed consent; (3) the court erred in charging the jury on the issue of a medical battery; (4) the court erred in allowing the count of negligent misrepresentation to go to the jury; and (5) the verdict on all counts was against the weight of the evidence. The motion for remittitur claims that the total sum awarded was excessive, but is not specific as to any category of damages.

Before reaching the issues, a summary of the facts is in order. Pollak's difficulties began with a knee injury suffered while playing high school lacrosse in 1993 at the Albany Academy in Albany, New York. After evaluation by a physician, Pollak was advised of alternative methods of treating her injury: surgery or application of a leg brace while participating in lacrosse. Pollak chose the latter.

Pollak's proficiency in lacrosse prompted her to try out for a position on the women's lacrosse team at Dickinson College in the fall of 1995. As a prerequisite, college policy required Pollak to undergo a physical examination by the team physician, Dr. Holencik. During the examination, Pollak advised Dr. Holencik of her pre-

existing injury. Upon further evaluation, Dr. Holencik determined that her knee was extremely unstable and denied her authorization to play lacrosse until the instability was corrected. Dr. Holencik recommended surgery, which he offered to perform.

Prior to surgery, Pollak and her father consulted Dr. Holencik to discuss the benefits of the procedure as well as its inherent risks. Both Pollak and her father testified at trial that during these discussions, Dr. Holencik made certain representations. According to Pollak: "I was told that if I got the surgery done in October, . . . I would, in fact, be able to play lacrosse in the spring, which was my number one concern." (N.T. vol. I, pp. 51, 14-17.) Pollak was also questioned about any pre-surgical discussions with Dr. Holencik.

"Mr. DeVere: During any of these face-to-face meetings or telephone calls, did Dr. Holencik ever discuss with you the nature of the surgery he was going to perform, that it would not be a widely used procedure called an extra-articular?

"Ms. Pollak: No.

"Mr. DeVere: Did he ever discuss with you prior to surgery that there was an alternative procedure called the intra-articular?

"Ms. Pollak: Never.

"Mr. DeVere: Did he ever mention to you anything about placing screws or hardware into your knee during the surgery?

"Ms. Pollak: No.

"Mr. DeVere: Did he talk to you about the scar[r]ing?

"Ms. Pollak: No." (N.T. vol. I, p. 52, 8-20.)

Steven Pollak, plaintiff's father, also recalled a conversation with Dr. Holencik during which the prospect of a delayed surgery was discussed: "Dr. Holencik impressed upon us that if you have this surgery done now, she can play [lacrosse] in the spring." (N.T. vol. II, p. 15, 20-21.)

On October 17, 1995, Dr. Holencik performed an extra-articular reconstruction of Pollak's injured knee, which included the insertion of certain screws and washers to support the joint. Pollak testified that she attended three post-operation visits per Dr. Holencik's instructions as well as undergoing rehabilitation sessions with physical trainers at Dickinson College. However, instead of fully recovering and playing lacrosse, Pollak experienced pain, swelling and a large scar. Had she known of the extent of the potential scarring, Pollak testified that she would not have subjected herself to the surgery.

Pollak explained that the pain and swelling of her knee was continuous over the balance of the school year. This condition prompted Pollak to consult Dr. Craig Westin of Utah,[1] another orthopedist. Dr. Westin performed additional surgery by opening the scar, removing the screws and washers, and rebuilding certain critical ligaments. This operation was more successful than the first, but Pollak was still left with the unattractive scar on her right leg. Since Pollak experienced pain and swelling, was unable to play lacrosse, and was left with a large scar on her right leg, she filed suit with this court on October 7, 1997.

---

1. Pollak had gone to Utah for a summer job.

Pollak presented Dr. Westin as an expert witness. Dr. Westin testified that the procedure performed by Dr. Holencik, an extra-articular repair, was outdated, "not an operation done in young athletic individuals" (N.T. vol. I, p. 188, 1-4), and should not have included the installation of screws and washers. According to Dr. Westin, had Dr. Holencik performed an intra-articular repair, the correct procedure, Pollak's scarring would not have been as severe. Dr. Westin concluded his testimony by stating, within a reasonable degree of medical certainty, that Dr. Holencik deviated from the accepted standard of medical care by doing an extra-articular repair rather than an intra-articular repair and that this deviation caused Pollak's injuries.

Dr. Holencik presented his own testimony. Although he agreed that Pollak was present at each of the three post-surgery appointments, Dr. Holencik testified that Pollak made no complaints about swelling or pain in her knee. After the initial three appointments, Dr. Holencik stated that Pollak never came to his office again, despite the coaxing of a Dickinson trainer. Had Ms. Pollak reported pain, Dr. Holencik testified that he would have removed the screws and washers from her knee. Essentially, Dr. Holencik claimed that Pollak's failure to attend follow-up appointments and her failure to properly follow rehabilitation instructions caused or at least contributed to her discomfort. In addition, Dr. Holencik defended his use of the extra-articular procedure. He also contended that Pollak was informed of the possibility of scarring, and that her own genetics caused her disfigurement. He denied promising that she could play lacrosse in the spring following surgery.

## A. MOTION FOR NEW TRIAL

### I. *Failure To Charge Jury On Contributory/Comparative Negligence*

We begin with Dr. Holencik's claim that the court erred by not providing a contributory/comparative negligence instruction to the jury. Dr. Holencik contends that Pollak's alleged failure to follow through with postoperative care constituted comparative/contributory negligence on her part and that the jury should have been instructed accordingly. Dr. Holencik submitted points for charge and jury interrogatories on this issue. On the afternoon of the day before the jury was to be instructed, the court engaged in a dialogue with counsel over the application of contributory negligence principles to this case. The court took the matter under advisement until the next morning.

The following morning after off-the-record discussions with counsel, during which the court advised that it would not charge on contributory negligence, the court inquired:

"The court: We're going to move rapidly ahead with that (closings and charge) at this time—well, before I do that, those proposed instructions, do you see any problems with them?

"Mr. McMahon (defense counsel): With the verdict? The special interrogatories?

"The court: Yes.

"Mr. McMahon: No, sir. These are acceptable to the defendant.

"Mr. DeVere: They're acceptable to the plaintiff, also." (N.T. vol. II, p. 166, 13-22.)

Except for a brief reference to the fact that Pollak did not return to Dr. Holencik with a complaint about pain from the screws used in her surgery, defense counsel did not mention "contributory negligence" in his address to the jury.

At the conclusion of its instructions, the court invited counsel to take exception to the charge in any respect, or request additional points. Mr. McMahon responded: "Your charge is acceptable to the defendant, as well, your honor." (N.T. vol. II, p. 217, 24-25.)

It is well established that, in order for an objectionable instruction to be preserved for review in post-trial motions, the objecting party must raise his or her objection during the trial. *Brown v. Philadelphia Tribune Co.,* 447 Pa. Super. 52, 58, 668 A.2d 159, 160 (1995); *Shaffer v. Pullman Trailmobile,* 368 Pa. Super. 199, 203, 533 A.2d 1023, 1024-25 (1987); *Thompson v. Motch and Merryweather Machinery Co.,* 358 Pa. Super. 149, 156, 516 A.2d 1226, 1229-30 (1986), *appeal denied,* 515 Pa. 584, 527 A.2d 544 (1987), *appeal denied, Petition of Thompson,* 515 Pa. 584, 527 A.2d 544 (1987). Failure to object to the court's jury instructions at trial precludes raising such an objection in post-trial motions. "[C]ounsel will not be permitted to 'sit idly by, tak[ing] his [or her] chances with instructions given at trial, and then, having lost the case, seek a new trial and second opportunity on the ground that the charge was prejudicial to his client.' " *Thompson, supra,* quoting *Reardon v. Meehan,* 424 Pa. 460, 468, 227 A.2d 667, 672 (1967). (citations omitted) (alterations in original)

"A motion for a new trial should be granted where the reading of the jury charge against the background of the

evidence reveals that the jury charge might have been prejudicial to the complaining party. . . . A refusal to give a proper instruction request by a party is grounds for a new trial only if the substance of that instruction was not otherwise covered by the trial court's general charge. . . . An error in a jury charge is sufficient ground for a new trial if the charge, taken as a whole, is inadequate, unclear, or has the tendency to mislead or confuse . . . a material issue. . . ." *Salameh v. Spossey,* 731 A.2d 649, 659 (Pa. Commw. 1999). (citations omitted)

Here, Dr. Holencik raised no objection to either the court's instructions or the jury interrogatories—neither of which included any mention of contributory negligence. Accordingly, Dr. Holencik's first claim of error must fail on the basis of waiver.

We continue this discussion, however, on its merits; not only to make the record complete, but also to address the cases cited by Dr. Holencik. What the court had advised counsel off-the-record on the morning of jury instruction was that it considered the failure of Pollak to follow up with Dr. Holencik to be an issue of causation regarding the damages she claimed and not a matter of contributory negligence going to liability. "Legal cause," as that term is understood, enters a personal injury claim at two levels. First, of course, is the issue of negligence itself. Did the negligence of the defendant, or the plaintiff, or some combination of the two cause the injury? This is where the concept of contributory negligence of the plaintiff becomes a factor. Notwithstanding any negligence of the defendant, however, any damages claimed by the plaintiff must have been legally

caused by the plaintiff's negligence—regardless of any apportionment for contributory negligence.

In this case, we advised counsel prior to charging the jury that we felt, to the extent Pollak's delay in seeking treatment contributed to her harm, such delay was in mitigation of the amount of damages claimed and had nothing to do with the primary issue of Dr. Holencik's negligence. The jury was instructed at some length on this point. (N.T. vol II., pp. 214-15.) Indeed, we have no way of knowing whether Pollak's claim for pain and suffering [2] was in fact diminished by the jury for failure to seek prompt treatment. Thus, Dr. Holencik's claim of error fails both procedurally and substantively.

## II. *Informed Consent*

Dr. Holencik's second argument is that the issue of lack of informed consent should not have been presented to the jury since Dr. Westin's testimony in that regard fell short of that required under Pennsylvania law. Specifically, Dr. Holencik contends that Pollak was required to opine on the risks of the chosen treatment, its alternatives, and to establish a causal nexus between the alleged lack of informed consent and the decision to undergo surgery or any injury resulting from the surgery.

We note the law concerning informed consent.

"[W]here a patient is mentally and physically able to consult about his [or her] condition, in the absence of an emergency, the consent of the patient is 'a prerequisite

---

2. This is the only element of damages that could be affected by a claim of delay. The medical expenses, loss of life's pleasures and disfigurement claims would not be affected by any delay.

to a surgical operation by his [or her] physician' and an operation without the patient's consent is a technical assault. *Smith v. Yohe,* 412 Pa. 94, 106, 194 A.2d 167, 174 (1963) . . . [F]or consent to be effective it must be informed and knowledgeable. . . . (citation omitted)

"In order for consent to be considered informed it must be shown that the patient was advised of 'those risks which a reasonable man would have considered material to his decision whether or not to undergo treatment.' *Sagala v. Tavares,* 367 Pa. Super. 573, 578, 533 A.2d 165, 167 (1987), *alloc. denied,* 518 Pa. 626, 541 A.2d 1138 (1988)." *Moure v. Raeuchle,* 529 Pa. 394, 404-405, 604 A.2d 1003, 1008 (1992).

Counsel for Pollak elicited the following testimony from Dr. Westin:

"Mr. DeVere: And another issue, Doctor, and my final question on direct examination is the claim o[f] informed consent. What information in your opinion should be discussed with a patient before a surgical procedure like Corrina had? And Doctor, can you tell us within a reasonable degree of medical certainty what type of information should be conveyed to a person before undergoing knee surgery?

"Dr. Westin: You need to know about the likely risks and the serious risks, and those would be—such as serious risks, infection, blood clot, the fact that the ligament would tear again, which is a risk of about 5 percent. The fact that this is from an intra-articular repair. There is— the risks of metal—any foreign material, whether it be metal or dissolvable, which we're using now, anything that's going to be implanted on a permanent basis needs to be told, the rehabilitation, the time required, and the

anesthetic risks and related to what anesthesia is being used.

"Mr. DeVere: And scar[r]ing would be something you share with the patient?

"Dr. Westin: I think the location of the scars should be discussed, where the external scars would be should be discussed. That would be considered a standard of care.

"Mr. DeVere: And have all your opinions given to the jury been within a reasonable degree of medical certainty?

"Dr. Westin: Yes, they have." (N.T. vol. I, pp. 189-90.)

We agree with Pollak that Dr. Westin provided expert testimony to the jury regarding the materiality of the risk of choosing to undergo the surgical procedure. In addition, we are satisfied that Dr. Westin's testimony was sufficient to permit the jury to determine whether or not Pollak appreciated such materiality of risk in undergoing surgery so as to constitute informed consent.

Notwithstanding the foregoing, Dr. Holencik argues further that expert testimony was necessary to show that the surgery at issue caused the claimed injury. Our research reveals some seemingly conflicting authority on the issue.

The Supreme Court of Pennsylvania has stated:

"We have held that a physician or surgeon who fails to advise a patient of material facts, risks, complications, and alternatives to surgery which a reasonable [person] in the patient's position would have considered significant in deciding whether to have the operation is liable for damages which ensue, *and the patient need not prove that a causal relationship exists between the physician's or surgeon's failure to disclose information and the*

*patient's consent to undergo surgery." Sinclair by Sinclair v. Block,* 534 Pa. 563, 568-69, 633 A.2d 1137, 1140 (1993) quoting *Gouse v. Cassel,* 532 Pa. 197, 202, 615 A.2d 331, 333 (1992). (emphasis added) (alteration in original)

Our Superior Court has further explained:

"This court has also recognized that a plaintiff need not prove by expert testimony that the surgery caused an injury. *Rowinsky v. Sperling,* 452 Pa. Super. 215, 223-25, 681 A.2d 785, 790 (1996), *appeal denied,* 547 Pa. 738, 690 A.2d 237 (1997). Recovery on the theory of informed consent is permitted regardless of causation because it is the conduct of the unauthorized procedure that constitutes the tort. *Moure,* 529 Pa. at 405, 604 A.2d at 1008." *Boutte v. Seitchik,* 719 A.2d 319, 323 (Pa. Super. 1998).

In support of his claim that causation in a medical battery case must be proven through expert testimony, Dr. Holencik cites *Montgomery v. Bazaz-Sehgal,* 742 A.2d 1125 (Pa. Super. 1999) and *Maliszewski v. Rendon,* 374 Pa. Super. 109, 542 A.2d 170 (1988). Both of these cases hold that expert testimony is required to establish a causal connection between the lack of informed consent and a claim of injury and suffering where the connection is not obvious. For example, in *Maliszewski,* we find this language:

"[I]t was essential for recovery to show that:

"as a result of the recommended treatment, the patient actually suffers an injury the risk of which was undisclosed, or the patient actually suffers an injury that would not have occurred had the patient opted for one of the

undisclosed methods of treatment." *Maliszewski,* 374 Pa. Super. at 114, 542 A.2d at 172. (citations omitted)

And in the *Montgomery* case, the court required expert testimony unless the causal connection was "obvious, direct and proximate." *Montgomery,* 742 A.2d at 1133.

We leave to our appellate courts the reconciliation of any conflict between *Montgomery/Maliszewski* and *Sinclair/Boutte.* On the record established in this case we find that the jury could find causation both from Dr. Westin's testimony and the obvious results portrayed by Pollak herself. The injuries here complained of were not abstract. The prolonged pain and suffering were causally related to the placement of the screws according to Dr. Westin. (See *e.g.,* N.T. vol. I, pp. 166, 186.) The same may be said for the disfigurement component of the damages. Dr. Westin made it clear that the size of the scar was related to the extra-articular procedure as opposed to the intra-articular method. (N.T. vol. I, p. 185). Moreover, that these results bore a causal nexus to the procedure performed seemed "obvious."

Finally, we note, as we did in addressing the contributory negligence issue, that Dr. Holencik took no exception to the jury interrogatory on informed consent or to our instruction on this subject. Any claim of error may be deemed waived on this issue.

### III. *Medical Battery*

We continue our discussion with the medical battery issue. Dr. Holencik argues that a medical battery instruction was erroneous because Pollak consented to her knee

surgery. We disagree. As discussed *supra,* the mere fact that a patient consents to a surgical procedure does not in itself prove that the consent was informed as required. Of course Pollak consented to the surgery and knew that Dr. Holencik was to operate on her knee. What was factually in dispute, and what the jury found, however, is that Pollak's consent was not *informed,* in that she was not fully aware of the surgery's material risks. Accordingly, when it is found that a physician did not obtain a patient's informed consent prior to conducting surgery, that physician has committed medical battery. *Moure, supra; Sagala, supra; Foflygen v. R. Zemel, M.D. (PC),* 420 Pa. Super. 18, 33, 615 A.2d 1345, 1353 (1992). Thus, the instruction was proper.

## IV. *Negligent Misrepresentation*

We now draw our attention to Dr. Holencik's claim that the count alleging negligent misrepresentation should not have been presented to the jury. Pollak based this count on Dr. Holencik's statements to her and her father that she would be able to play lacrosse during the spring following her surgery.

"Negligent misrepresentation requires proof of: (1) a misrepresentation of a material fact; (2) made under circumstances which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and; (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Bortz v. Noon,* 556 Pa. 489, 499, 729 A.2d 555, 561 (1999).

In his brief, Dr. Holencik contends that a claim of negligent misrepresentation requires a physical injury as well

as expert testimony to establish the elements of the tort. We reject this contention.

First, we have found no authority suggesting that expert testimony is required to support a claim for negligent misrepresentation. In general, expert testimony is only required when the subject matter is so specialized as to be beyond the knowledge of the average layperson. Pa.R.E. 702. If the subject matter is readily comprehensible and the average person should not need interpretation of the evidence in order to render the appropriate disposition, expert testimony is not required. *Commonwealth v. Simmons*, 541 Pa. 211, 662 A.2d 621 (1995).

While it is true that expert evidence is required to support a negligence claim founded in professional malpractice, *Welsh v. Bulger*, 548 Pa. 504, 513-14, 698 A.2d 581, 585 (1997), an allegation of negligent misrepresentation is not the same. A medical malpractice action involves complex causation issues regarding whether or not the plaintiff's injuries were the consequence of the defendant's deviation from a standard of care. In the negligent misrepresentation action at bar, we are convinced that the issues involved are within the understanding of the average juror. Surely, there are negligent misrepresentation cases where the factual complexities may require expert interpretation. Dr. Holencik has not, however, demonstrated to us a universal requirement of expert testimony in all cases alleging negligent misrepresentation.

We also reject Dr. Holencik's argument that Pollak must allege physical harm in her negligent misrepresen-

tation claim. Our jury instruction was founded in the Restatement (Second) of Torts:

"(1) One who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information, where such harm results

"(a) to the other, or

"(b) to such third persons as the actor should expect to be put in peril by the action taken.

"(2) Such negligence may consist of failure to exercise reasonable care

"(a) in ascertaining the accuracy of the information, or

"(b) in the manner in which it is communicated." Restatement (Second) of Torts §311.

In his motion, Dr. Holencik argues that Pollak has not alleged any physical harm as is required under section 311, in that her inability to play lacrosse does not equate to physical injury.

Here, Dr. Holencik confuses physical harm with its resultant damages. Pollak's physical harm occurred when she experienced pain and swelling from what the jury deemed to be an outdated surgical procedure. Her inability to play lacrosse, or her loss of life's pleasures, on the other hand, occurred as a result. One simply cannot consider the corresponding product of an injury to be that which was caused by the initial misrepresentation. Dr. Holencik's representation that Pollak would be able to play lacrosse persuaded her to undergo surgery. The surgery caused her physical injury, which, in turn, prevented her from playing lacrosse. Accordingly, Pollak indeed suffered physical harm as required by section 311,

making the negligent misrepresentation instruction proper.[3]

## B. MOTION FOR REMITTITUR/VERDICT SUPPORTED BY WEIGHT OF THE EVIDENCE

Finally, we address jointly Dr. Holencik's motion for remittitur and weight of the evidence claims, since both embrace the same issues.

"A party is entitled to a new trial based on the weight of the evidence

"only where the verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail . . . . [The appellant] is not entitled to a new trial where the evidence is conflicting and the [finder of fact] could have decided either way." *Petrasovits v. Kleiner,* 719 A.2d 799, 803 (Pa. Super. 1998). (citations omitted) (alterations in original)

Whether a new trial is granted due to an excessive verdict is discretionary upon the trial court. *Id.* at 806.

"In determining whether a verdict is excessive a court may consider the following factors: (1) the severity of the injury; (2) whether the injury is manifested by objective physical evidence or whether it is only revealed by the subjective testimony; (3) whether the injury is per-

_____

3. We must add that the discussion here is largely academic since the sole element of damages which flowed from this count, as we instructed the jury (N.T. vol. II, p. 221), was that of loss of life's pleasures (the ability to play lacrosse). This element of damages, however, was also properly considered under Counts 1 and 2. Since the jury found liability on both of these counts as well, it is largely irrelevant whether and on what count they made their award.

manent; (4) whether the plaintiff can continue with his or her employment; (5) the size of the out-of-pocket expenses; (6) [t]he amount of compensation demanded in the original complaint. However, as each case is unique, the court should apply only those factors which are relevant to that particular case before determining if that verdict is excessive." *Id.* (alteration in original)

Our Superior Court also provides guidance for remittitur:

"Judicial reduction of a jury award for compensatory damages is appropriate only when the award is plainly excessive and exorbitant in a particular case. . . . The trial court may grant a request for remittitur only when a verdict that is supported by the evidence suggests that the jury was guided by partiality, prejudice, mistake or corruption. . . .

" 'A remittitur should fix the highest amount any jury could properly award, given due weight to all the evidence offered.' . . . Therefore, the correct question on review is whether the award of damages 'falls within the uncertain limits of fair and reasonable compensation or whether the verdict so shocks the sense of justice as to suggest that the jury was influenced by partiality, prejudice, mistake, or corruption. . . .' " *Doe v. Raezer,* 444 Pa. Super. 334, 340, 664 A.2d 102, 105 (1995), *reargument denied, appeal denied,* 544 Pa. 630, 675 A.2d 1248 (1995). (citations omitted)

Corrina Pollak suffered with pain and swelling in her knee while she lost her fleeting opportunity to play collegiate lacrosse as a result of Dr. Holencik's performance of an outdated procedure. In addition, Pollak, a young woman now in her early twenties, wears a large,

ugly scar on her right leg. Through their award, the jury expressed their considered judgment of fair and just compensation for Dr. Holencik's treatment of his patient. Does the dollar award shock our conscience? It does not, and is fully supported by the evidence addressed during this four-day trial. The jury's judgment will not be altered.

We enter the following:

## ORDER

And now, August 9, 2000, upon consideration of the motion for new trial and motion for remittitur of defendant Mark P. Holencik D.O., defendant's motions are hereby denied.