684 A.2d 610

**Edward J. GRABOWSKI, an individual, Appellant,**

v.

**Matthew R. QUIGLEY, M.D., Julian E. Bailes, M.D., Joseph C. Maroon, M.D., and Allegheny General Hospital, Appellees.**

Superior Court of Pennsylvania.

Argued April 17, 1996.

Filed Oct. 18, 1996.

28

Laurel B. Diznoff, Pittsburgh, for appellant.

Michael A. Sosnowski, Pittsburgh, for Quigley, Bailes, and Maroon, appellees.

Before HUDOCK, FORD ELLIOTT and BROSKY, JJ.

HUDOCK, Judge.

Edward Grabowski (Appellant) appeals from the order of the trial court granting the summary judgment motions of the several Appellee doctors and dismissing them from this personal injury action. We affirm in part and reverse in part.

The facts and procedural history may be summarized as follows: Appellant was injured on January 4, 1989, when he slipped and fell on ice, injuring his lower back. Because his symptoms became progressively worse, Appellant sought treatment from Appellee Matthew R. Quigley, M.D. (Quigley). At the time that Appellant sought treatment, he had complaints of low back pain radiating into his left leg with numbness and tingling of his left foot, particularly between two toes. Appellant at this time did not have, however, a drop foot and was not dragging his foot when he walked.

Quigley recommended to Appellant that he undergo corrective surgery. Quigley told Appellant that he would perform the necessary surgery and that he would schedule it. He also informed Appellant that there were risks associated with

anesthesia and that, after the surgery, he might have continued back pain and/or paralysis. Appellant was not informed about the risk that he might have a drop foot or that all portions of his herniated disc might not be removed. Appellant agreed to undergo the surgery and to have Quigley perform it. Quigley's secretary then scheduled the surgery for April 17, 1989.

The night before the scheduled surgery Appellant received a phone call rescheduling the surgery for April 18, 1989. Although not given a surgical time, Appellant was told to report to Allegheny General Hospital (AGH) at 6:00 a.m. Appellant went to AGH as directed. After his arrival, he was taken to a room, changed his clothes and was placed on a gurney. An anesthesiologist then came to meet with him. After the anesthesiologist left, a nurse came in and handed Appellant a form entitled "Consent to Operation, Anesthetics, and Special Procedures." Appellant was told to sign the form so that Quigley could perform the surgery. The nurse stood by while Appellant signed the form. No other explanation was given. Appellant was then taken to the operating room and placed under anesthesia.

Following surgery, Appellant had continuing back pain. He also noticed a problem with his left foot—he noticed that it would "drag" whenever he walked. When Appellant asked Quigley about the problem, Quigley told him that he had developed a drop foot which was a result of the surgery. Quigley ordered physical therapy, but there was no real improvement in Appellant's condition. Thus, Quigley ordered additional diagnostic tests and discussed the results with Appellant and told him that additional surgery was required. Appellant decided to get a second opinion and, therefore, requested his medical records.

After obtaining the records, Appellant reviewed them. Included within the records was a letter from Quigley to David Torpey, Chief, Division of Anesthesia, dated April 19, 1989. From this letter, Appellant learned for the first time that Quigley was in Somerset County at the time that he was placed under anesthesia and that Appellee Julian E. Bailes,

M.D. (Bailes), rather than Quigley, had performed a major portion of his surgery. A review of the anesthesia records revealed that Appellant was placed under anesthesia at 8:15 a.m. Quigley was then paged at 8:35 a.m. and then several times over the next twenty minutes. Quigley's office was then called at 8:50 a.m. and 9:15 a.m. Appellee Joseph C. Maroon, M.D. (Maroon) was made aware of Quigley's absence, and at approximately 9:15 p.m. the anesthesiologist spoke with Maroon. The anesthesia record further revealed that Bailes began the surgical procedure, at the request of Maroon, at 10:20 a.m. Finally, the anesthesia record stated that Quigley arrived in the operating room at 11:25 a.m. and surgery was completed at 12:30 p.m.

Appellant was extremely upset to learn physicians that he did not know and had not authorized performed surgery on him and/or directed a physician to perform surgery on him. Appellant was also upset to learn that Quigley did not perform his surgery. According to Appellant, he would not have undergone the surgery had he known Quigley would not be performing the procedure in its entirety. Appellant sought a second opinion from Frances T. Ferraro, M.D. (Ferraro), who performed surgery on him in April of 1990 for excision of disc fragments at the site of the April, 1989, surgery. According to Appellant, he was informed by Ferraro that the fragments that were removed were lying on a nerve and that this fact caused his continued back pain and drop foot.

Appellant commenced the instant action by writ of summons filed in April, 1991. The various counts within Appellant's amended complaint may be summarized as follows:

Count I—Appellant did not consent to the commencement and performance of the surgery by Bailes and did not consent to Quigley performing only a portion of the surgery; "[b]y reason of the foregoing, [Appellant] was operated upon without his consent and was bruised and battered in and about his person."

Count II—Quigley and/or Bailes performed the surgery in a negligent manner.

Count III—Quigley was negligent in scheduling the surgery and in not being present to perform the surgery in its entirety.

Count IV—Quigley breached an oral agreement with Appellant to perform the surgery in its entirety and in a non-negligent manner; Quigley also breached the agreement by directing and/or permitting Bailes to commence the surgery and perform a portion of the surgery in his absence.

Count V—Appellant, at no time, granted authority or consent to Maroon to direct Bailes to commence and perform the surgery.

Count VI—Maroon, by assuming control and directing that the surgery be commenced by Bailes in Quigley's absence, became vicariously liable for their acts.

*See* Plaintiff's First Amended Complaint, 4/5/96.[1]

The Appellee doctors filed preliminary objections to Appellant's complaint in the nature of demurrers, motions to strike, and motions for more specific pleading. After argument, these preliminary objections were denied. The Appellee doctors then filed their answer and new matter. Discovery then followed and Appellant's deposition was taken on February 3, 1993. Thereafter, counsel for Appellee doctors filed a motion to dismiss and/or preclude expert testimony. On November 18, 1994, an order was entered preventing Appellant from utilizing expert testimony at trial. The Appellee doctors then filed motions for summary judgment alleging that Appellant could not support a claim of negligence or lack of consent against them and further could not support a claim for breach of contract against Quigley. Appellant filed a response to the motions for summary judgment as well as a supporting affidavit. Following oral argument, the trial court granted summary judgment to the Appellee doctors on Counts I through VI, inclusive, and dismissed them from the underlying action.

1. Although not at issue in the present case, Appellant's complaint also included two counts against AGH sounding in corporate negligence and vicarious liability. The final count of Appellant's amended complaint asserted the joint and several liability of AGH and the Appellee doctors.

By order dated October 10, 1995, the trial court amended its order certifying the case for appeal as a final order. *See* Pa.R.A.P., Rule 341(c), 42 Pa.C.S.A. This appeal followed.

Appellant claims on appeal that the trial court improperly granted summary judgment because there are genuine issues of material fact concerning the Appellee doctors' liability. When determining if a trial court properly entered summary judgment, this Court's scope of review is plenary. *Schriver v. Mazziotti,* 432 Pa.Super. 276, 278, 638 A.2d 224, 225, *alloc. den.,* 539 Pa. 638, 650 A.2d 52 (1994). We must examine the entire record in the light most favorable to the non-moving party and resolve all doubts against the moving party when determining if there is a genuine issue of material fact. *Id.* We will reverse the trial court's decision only if there has been an error of law or a clear abuse of discretion. *MacCain v. Montgomery Hospital,* 396 Pa.Super. 415, 417, 578 A.2d 970, 972, *alloc. den.,* 527 Pa. 624, 592 A.2d 45 (1990). Summary judgment is granted when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there exists no genuine issue of material fact. *See generally,* Pa.R.C.P., Rule 1035, 42 Pa.C.S.A. The moving party has the burden of proving the non-existence of any genuine issue of fact. *Accu–Weather, Inc. v. Prospect Communications, Inc.,* 435 Pa.Super. 93, 98, 644 A.2d 1251, 1254 (1994). The non-moving party must demonstrate that there is a genuine issue for trial and may not rest on the averments in its pleadings. *Id.*

Appellant argues that genuine issues of material fact exist with respect to all counts of the complaint dismissed by the trial court. We will address each count in the order presented by Appellant.

■ In Count I, Appellant alleges that he did not consent to the manner in which he was operated upon by Bailes and/or Quigley and argues that the record evinces a genuine issue of material fact as to the doctors' liability under a theory of battery. The facts asserted by Appellant on the issue of consent are largely set out above. Generally, Appellant has

asserted facts which demonstrate that he consented to an operation to be performed in its entirety by Quigley, not by Bailes, or a combination of Bailes and Quigley. Appellee doctors counter by noting that the consent form which Appellant signed stated that the surgery would be "performed under the direction of Dr. Quigley, et al". Appellant testified that "et al", which was handwritten, looked to him like "ETOL", and that he did not know what the words meant until counsel explained them to him on the morning of his deposition.

In addition, Appellant argues that the evidence demonstrates that he was not the only one who was of the belief that Quigley would be performing the operation. He points to the anesthesia record which shows that Quigley had been paged and called numerous times in an attempt to locate him while Appellant was under anesthesia. He also notes that Quigley wrote a letter to his superior detailing the events of that morning. The letter takes an apologetic tone in which Quigley appears to acknowledge that he was to operate on Appellant that morning. A significant excerpt of the letter reads as follows:

> [Y]ou can imagine my chagrin when [approximately one hour after anesthesia had been introduced] I received a phone call that my first case was on the table already asleep. At this point we faced two options, one of reawakening [Appellant] and informing him of the mishap or having another physician starting the case and allowing time to return and finish it. We elected to do the latter. . . .

Appellee doctors argue that Appellant admitted in his deposition testimony that he likely expected that Quigley would be assisted during the operation. Because Quigley did arrive in time to finish the operation, they urge that Bailes merely assisted in the procedure. Nevertheless, examining the record in a light most favorable to Appellant, as the non-moving party, we conclude that a genuine issue of material fact exists with respect to Appellant's consent.

■ Over thirty years ago our Supreme Court stated that "where a patient is mentally and physically able to consult about his condition, in the absence of an emergency, the consent of the patient is 'a prerequisite to a surgical operation by his physician' and an operation without the patient's consent is a technical assault." *Smith v. Yohe,* 412 Pa. 94, 106, 194 A.2d 167, 174 (1963) (citations omitted). *Accord Moure v. Raeuchle,* 529 Pa. 394, 404, 604 A.2d 1003, 1008 (1992); *Stover v. Association of Thoracic and Cardiovascular Surgeons,* 431 Pa.Super. 11, 17, 635 A.2d 1047, 1050 (1993).

Since Appellant has alleged facts which, if true, established that consent was not given to Bailes and/or Quigley to perform the surgery in the manner in which it occurred, he has thereby alleged sufficient facts to establish a cause of action for battery against them.

■ This does not end the inquiry, however, because Appellant is in the precarious position of having been precluded from introducing expert testimony. As correctly noted by the trial court, it is generally the case that expert medical testimony is required to support a claim of medical malpractice. In the usual medical malpractice case, the requirement is twofold: 1) to establish whether the physician breached the standard of professional care, and 2) to establish the causal nexus between the act and the injury. *See generally Hamil v. Bashline,* 481 Pa. 256, 266, 392 A.2d 1280, 1285 (1978). The reason for the requirement is the complicated nature of the medical field which is generally held to be beyond the knowledge of the average juror. *Maliszewski v. Rendon,* 374 Pa.Super. 109, 112, 542 A.2d 170, 172 (1988), *alloc. den.,* 520 Pa. 617, 554 A.2d 510 (1989). Here, because the theory of recovery is battery, Appellant need not establish that the surgery was performed in a negligent manner. In other words: "said surgery could have been done perfectly, and could even have had a beneficial effect on the patient, yet a cause of action could still exist; for it is the very conduct of the unauthorized procedure which constitutes the tort." *Moure,* 604 A.2d at 1008 (referring to informed consent action).

██ Nevertheless, it is axiomatic that in any tort action the plaintiff must prove that the injury for which recovery is sought was caused by the tortious act in question. *Maliszewski,* 542 A.2d at 172. Unlike an informed consent case where it must be shown that " 'as a result of the recommended treatment, the patient actually suffers an injury the risk of which was undisclosed, or the patient actually suffers an injury that would not have occurred had the patient opted for one of the undisclosed methods of treatment[,]' " *Id.* (*quoting Neal by Neal v. Lu,* 365 Pa.Super. 464, 478, 530 A.2d 103, 111 (1987)), it is not necessary for a plaintiff to prove such specific medical findings under a theory of battery. Therefore, while the need for expert medical testimony is necessary in an informed consent case, it is not where the case involves battery. *See Tom v. Lenox Hill Hospital,* 627 N.Y.S.2d 874, 876, 165 Misc.2d 313, 316 (1995) (recognizing battery claim under similar facts and providing that claim "does not require expert medical testimony as would normally be true with an informed consent claim").

██ Where it is proven that an unauthorized invasion of a person's personal integrity has occurred, even if harmless, the person is entitled to nominal damages. Prosser and Keeton, *Law of Torts* § 9 at p. 40 (5th ed.1984). In *Perna v. Pirozzi,* 92 N.J. 446, 457 A.2d 431, (1983), the New Jersey Supreme Court further explained:

The plaintiff may further recover for all injuries proximately caused by the mere performance of the operation, whether the result of negligence or not. If an operation is properly performed, albeit by a surgeon operating without the consent of the patient and the patient suffers no injuries except those which foreseeably follow from the operation, then a jury could find that the substitution of surgeons did not cause any compensable injury. Even there, however, a jury could award damages for mental anguish resulting from the belated knowledge that the operation was performed by a doctor to whom the patient had not given consent. Furthermore, because battery connotes an intentional invasion

of another's rights, punitive damages may be assessed in an appropriate case.

*Perna,* 457 A.2d at 438 (citations omitted).

■ The trial court thus improperly concluded that Appellant is precluded from recovery because he cannot provide expert medical testimony. The dispositive issue in this battery claim is the nature and scope of Appellant's consent. Appellant contends that as a result of his dealings with Quigley, his consent extended to an operation to be performed by Quigley only. He claims that the consent form which he signed on the morning of the operation was ambiguous on its face, and that he believed by signing he was providing his consent to Quigley only. *See Gray v. Grunnagle,* 423 Pa. 144, 165, 223 A.2d 663, 674 (1966) (patient signed consent form while under care of one doctor and before appearance of second doctor; "[c]ertainly under these circumstances, [the second doctor] could not or should not have assumed that this consent was intended for him."). On these facts we find that genuine issues of material fact exist with respect to Count I, in the absence of expert testimony, such that summary judgment is inappropriate. Thus, we reverse the trial court's grant of summary judgment in favor of Bailes and Quigley as to Count I of Appellant's complaint and remand that count for trial.

■ With respect to Count II, the trial court was correct in granting summary judgment. This count proceeds under a theory of medical negligence which, as noted above, would require expert medical testimony to establish. *See Hamil, supra.* Thus, we affirm the grant of summary judgment as to this count of Appellant's complaint.

■ Counts III and IV arise out of the alleged agreement between Appellant and Quigley for the performance of surgery by Quigley. Count III sounds in negligence while Count IV alleges breach of contract.[2] In Count IV Appellant alleged

2. Because we find that Appellant's claim is more appropriately couched as breach of contract, we proceed with a discussion thereof. *See Kaskie v. Wright,* 403 Pa.Super. 334, 339, 589 A.2d 213, 216 (1991) ("In Pennsylvania, consent to treatment is a contractual agreement between

that he entered into an oral agreement with Quigley providing that Quigley would perform the surgery. The facts outlined above with respect to Appellant's consent also support his argument that a contract existed, and that Quigley breached this contract. Appellant claims that Quigley breached the contract by 1) scheduling the surgery for a time when he would not be present, 2) failing to perform the surgery in its entirety and/or directing and/or permitting Bailes to commence the surgery, and 3) allowing the surgery to proceed without himself being present. Upon consideration of the aforementioned facts, we conclude that a genuine issue of material fact exists with respect to this claim.

In *Gray v. Grunnagle*, 223 A.2d at 669, our Supreme Court explained:

'In order to understand the nature of consent it is necessary at the outset to have some understanding of the legal relationship between the physician and his patient. This relationship is essentially contractual in nature.... More often than not the contract is raised by implication from the dealings between the parties, and in a like manner the acts to be performed by the parties are impliedly defined. Thus, if a patient consults a surgeon for the purpose of removing a tumor from his arm, a contract is entered into which requires the surgeon to remove the tumor. Therefore, he must not digress from that contract and also remove the patient's appendix. In short, the surgeon must operate in accordance with the agreement made between the parties'.

*Id.* (*quoting* Powell, *Consent to Operation,* 21 Md.L.Rev. 189, 191 (1961)).

█ The Appellee doctors argue that Appellant's breach of contract claim must fail in the absence of a "special or expressed contract" between Appellant and Quigley that Quigley would perform the entire surgery or that he would be the only one performing the surgery. It appears that this argument derives from the language of 40 Pa.S.A. section 1301.606,

the parties under which physical contact with the patient's body must be agreed to ...").

which provides that without "a special contract in writing, a health care provider is neither a warrantor nor a guarantor of a cure." Accordingly, Appellee doctors cite various decisions holding that a breach of contract claim would not lie, absent such a contract, where the plaintiff sought to obtain a specific result from the treatment. However, this line of cases is inapposite to the instant case, in which Appellant has not alleged a warranty theory or failure to obtain a specific result. Here, Appellant has alleged only that he and Quigley entered into an oral contract whereby Quigley promised that he would perform the surgery. The necessity of a special written contract in the context of a warranty or a guarantee of a cure is clear. The medical profession can seldom guarantee a specific result from a given method of treatment. Therefore, the typical contract for medical services, as noted above, should not and does not encompass any guarantee.

However, a basic tenet of the contract, if it is to be a contract at all, is that the physician with whom the patient has contracted is obligated to perform the services. In this regard, the *Perna* court quoted from the Judicial Council of the American Medical Association, Op. 8.12 (1982):

> The patient is entitled to choose his own physician and he should be permitted to acquiesce in or refuse to accept the substitution.... The patient is entitled to the services of the particular surgeon with whom he or she contracts. The surgeon, in accepting the patient is obligated to utilize his personal talents in the performance of the operation to the extent required by the agreement creating the physician-patient relationship. He cannot properly delegate to another the duties which he is required to perform personally.... If the surgeon employed merely assists the resident or other physician in performing the operation, it is the resident or other physician who becomes the operating surgeon. If the patient is not informed as to the identity of the operating surgeon, the situation is "ghost surgery".

*Perna*, 457 A.2d at 440, n. 3 (additional citations omitted). Thus, we conclude that Appellant is not required to establish that a specific written contract existed.

As to Appellee doctors' contention that Appellant must demonstrate an "express" (rather than "implied") contract, we choose not to indulge in a "classification [which], at its best, is of no practical value and may even mislead." Murray, *Murray on Contracts* § 19 at p. 34 (3rd ed.1990). The evidence of record indicates that a question exists as to whether a contract was created by the dealings between Appellant and Quigley. Moreover, if a contract existed, there is a question with respect to the terms thereof and whether Quigley's actions constituted a breach. Viewing the record in a light most favorable to Appellant, these are all genuine issues of material fact such that summary judgment with respect to count four is inappropriate. Furthermore, Appellant's contract claim will not fail for lack of expert testimony. At this juncture, no further discussion with respect to damages is warranted. A cause of action exists even if no compensable loss can be shown because any breach gives rise to at least nominal damages. *Murray,* § 124 at p. 707. Thus, we reverse the trial court's grant of summary judgment as to these two counts and remand them for trial.

Counts V and VI allege that Maroon is vicariously liable for the battery, due to the actions of Bailes, because the former directed the latter to begin the surgery. The Appellee doctors argue that, because Maroon took no part in the alleged battery itself, he cannot be held liable. *See Foflygen v. R. Zemel, M.D. (PC),* 420 Pa.Super. 18, 33, 615 A.2d 1345, 1353 (1992), *alloc. den.,* 535 Pa. 619, 629 A.2d 1380 (1993) ("under normal circumstances, only the physician who performs the operation on the patient had the duty of obtaining the patient's informed consent"). We disagree. In *Foflygen,* the plaintiff sought to hold a physician who only performed her pre-surgery examination, as well as a nurse, liable as joint tortfeasors in her informed consent cause of action. Unlike the alleged actions of Maroon in the present case, there is no indication in *Foflygen* that these persons participated in a decision as to who would actually perform the surgery at issue in that case. Rather, these persons merely participated in the events prior to the performance of the surgery by another

physician. Accepting the facts in a light most favorable to Appellant as the non-moving party, we conclude that the trial court erred in granting the Appellee doctors' motion for summary judgment as to Counts V and VI of Appellant's complaint. We therefore remand these counts for trial.

For the reasons stated above, we conclude that the trial court erred in granting summary judgment as to Counts I, III, IV, V, and VI of Appellant's complaint and in dismissing Doctors Quigley, Bailes, and Maroon as parties to the action. Because Appellant is precluded from presenting expert testimony as to any claim of medical malpractice, summary judgment was properly granted as to Count II.[3] Thus, we remand the counts enumerated above for trial along with the remaining counts asserted against AGH.

Order affirmed in part and reversed in part. The matter is remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

---

**3.** To the extent Count VI alleges that Maroon is vicariously liable for the alleged medical negligence of Bailes, summary judgment was properly granted. *See* discussion regarding Count II, *supra.*