**In re Silicone Breast Implant Litigation**

C.P. of Allegheny County, no. GD94-14550.

*Alan H. Perer,* for plaintiffs.

*Diane Barr Quinlin,* for defendant Skrenta M.D.

*John A. Bass, Dorothy Duffy, Peter J. Hoffman* and *David M. Neuhart,* for defendants.

WETTICK, *J.,* September 22, 2003—The subjects of this opinion and order of court are defendants' motions in limine.

## I.

The first motion in limine that I address requests a ruling that a plaintiff must base her lack of informed consent claim on the injuries that she sustained from undisclosed risks.

Plaintiffs contend that this motion should be denied because, according to plaintiffs, for a claim of lack of informed consent, a plaintiff needs to prove only that the defendant-physician failed to disclose a material risk of the procedure and the plaintiff suffered some injury as a result of the procedure. The plaintiff is not required to establish that the injuries for which she is seeking compensation were undisclosed risks of the breast implant procedure.

In several cases that are scheduled for arbitration, plaintiffs seek to offer an expert witness who will testify that prior to silicone breast implant surgery the physician should have discussed with the patient risks known at that time to be common to most operations, including excessive or delayed bleeding, seroma collections of serum under the skin, infection, excessive scarring of the incision, excessive or prolonged pain, implant removal due to infection, adverse effects from the anesthesia, al-

lergic reactions, and risks of drug usage after surgery. In addition, the physician should have discussed the following risks specific to breast implants: Implants are not lifetime devices—they may wear out; explant surgery may be indicated at any time; implants may rupture as a result of injury such as a blow to the chest or as a result of normal wear and tear; even if unbroken, implants lose amounts of silicone gel through gel bleed—the gel can migrate to other parts of the body and may have a long-term effect; additional surgery may be required to retrieve the migrated silicone gel; capsular contraction is the most common problem—this results in excessive firmness of the breast, causing discomfort and pain in the breast, distortion of the breast, and/or displacement of the implant; the presence of a silicone gel implant makes it more difficult to read and interpret a mammogram; the implant can cause changes in the sensation of the nipple and the remainder of the breast; there may be aesthetic shortcomings—there may be asymmetry in size and shape, unsatisfactory placement and poor surgical location that may require additional surgery; extrusion may occur because of inadequate tissue coverage; saline implants are an alternative to silicone implants which do not present the risk of gel bleed or gel migration; and as of the date of the surgeries there was the possibility that silicone breast implants may cause autoimmune diseases.[1]

It is the position of plaintiffs that if the fact-finder accepts the testimony of plaintiffs' expert that each of the

---

1. Although this court granted defendants' *Frye* motion and ruled that plaintiffs may not pursue claims for autoimmune diseases, it is plaintiffs' position that as of the dates of the implants, this was believed to be a known risk that should have been discussed.

matters which this expert described is a material risk, plaintiffs will prevail if the physician failed to discuss even one of these risks. Thus, if severe pain due to capsular contracture is the only harm that the plaintiff experienced and if the plaintiff acknowledges that the physician described this risk prior to surgery, she may still recover if the physician failed to discuss one or more of the other risks such as gel bleed, changes in sensation, infection, or the possibility that silicone breast implants may cause autoimmune diseases.

The healthcare providers, on the other hand, contend that there can be no recovery for harm that the patient understood to be a known risk. Thus, the plaintiff may recover only by showing either she did not know the surgery presented the risk of harm she experienced or she was not advised of an alternative that would have minimized or eliminated this risk.

Plaintiffs raise the following argument in support of their position that they may recover for injuries, the risks of which were disclosed, if there were any undisclosed material risks associated with the implant surgery: A person may recover for any injuries caused by a battery. Any surgery, if not consented to, is a battery. A surgery performed without informed consent is surgery that is performed without consent. A surgery is performed without informed consent unless the physician advised the patient of every risk associated with the surgery and the alternatives to the surgery that a person in the patient's situation would consider significant in deciding whether to have the surgery.

Assume a patient has chronic and severe pain in her thumb. The physician describes surgery that will elimi-

nate the pain. The physician tells the plaintiff that while the surgery will remove the pain, it is extremely likely that she will not be able to use her thumb in the future. The physician does not tell the patient that there is a 5 to 10 percent chance that she will lose the use of her four fingers along with the thumb. The plaintiff has the operation. She loses the use of her thumb. However, she has no further pain and continues to have the use of her fingers.

The patient could not have made an informed decision as to whether to have the surgery without taking this additional risk into account. This means, according to the plaintiffs, that the patient should be treated under the law in the same fashion as if surgery was performed without any authorization. Thus, she can sue for the loss of the use of her thumb.[2]

The case law has developed the battery approach to a lack of informed consent so that a patient does not experience any injury from a surgical procedure that constitutes a known risk unless the patient was willing to assume the risk. The opposite side of this doctrine is that unless the physician was negligent, the patient who experiences an injury from a risk that was fully explained to the patient has assumed this risk. If I accept plaintiffs' argument, the law will be permitting recovery for a risk that the plaintiff assumed because the plaintiff might have

---

2. Legislation addressing informed consent (Act of November 26, 1996, P.L. 776, no. 135, §10, 40 P.S. §1301.811-A, repealed and recodified as amended, Act of March 20, 2002, P.L. 154, 40 P.S. §1303.504) is inapplicable because these laws became effective after the breast implant surgeries.

made a different decision as a result of knowing of other risks for which the plaintiff did not experience any harm.

Frequently, there are factual disputes as to what the patient was told and as to what constitutes each and every material risk that should have been discussed with a patient. Also, a physician may choose not to fully explain each of the obvious risks associated with the surgery (such as an infection) in order that the conversation with the patient focuses on information the patient most needs in order to make an informed decision. Allowing recovery for a risk that the patient knowingly assumed would, as a practical matter, create a situation in which physicians who were not negligent might frequently be liable for injuries from a risk that the patient knowingly assumed. Thus, the doctrine of informed consent would have a reach that extends far beyond the purposes for the doctrine.

There are two purposes for the tort of lack of informed consent: to compensate a patient who suffers an injury from a known risk that was not disclosed, and to create a climate in which physicians will discuss the known risks with their patients. Allowing recovery only for injuries relating to known risks that were not explained to the patient will achieve both purposes.

With the exception of punitive damages, tort law does not regulate behavior through the imposition of punitive awards. It regulates behavior only through the award of damages that are intended to compensate a party for his or her actual losses. No relief is provided without actual losses. A patient who assumed a known risk has not sustained any actual losses from the physician's failure to disclose other material risks.

This ruling, that in the absence of negligence a patient may not recover for an injury from a risk that was discussed with the patient, is consistent with the Superior Court's discussion of the requirements to establish a claim of lack of informed consent.

In *Jozsa v. Hottenstein,* 364 Pa. Super. 469, 528 A.2d 606 (1987), the trial court entered a directed verdict in favor of the defendant-physician because expert testimony established that there was only a 4-5 percent risk of recurrence for carpal tunnel after the surgery and no expert testimony was offered as to alternative procedures or their feasibility. The Superior Court reversed. The court stated:

"The law is very clear that once expert medical testimony establishes that there was a risk of any nature to the patient that he or she was not informed of, *and after surgery the patient suffers from that undisclosed risk,* it is for the jury to decide whether the omission was material to an informed consent. . . .

"We emphasize that once expert testimony establishes the existence of an undisclosed risk of a recommended medical procedure . . ., it is the role of the jury to decide whether that type of harm *if it occurs,* is a risk which a reasonable patient would consider in deciding on whether to undergo or reject the procedure." *Id.* at 474, 528 A.2d at 608. (emphasis added)

In *Neal by Neal v. Lu,* 365 Pa. Super. 464, 478, 530 A.2d 103, 110 (1987), the treating physician admitted that he never explained to the patient (a minor) or the patient's parents the possibility that the surgery would require " 'trimming' of bone or the insertion of a 'pin.' "

Both the patient and her mother testified that they would not have consented to the surgery had they known of the possible consequences. They sought reversal of a verdict in favor of the physician on the ground that the evidence conclusively established the physician's liability on the informed consent claim. In its discussion, the court set forth three requirements to establish liability, one of which is an injury the risk of which was undisclosed:

"In Pennsylvania, a physician is liable to his or her patient if (1) the physician fails to disclose any risk in the recommended treatment, or the existence of any alternative method of treatment, that a reasonable person would deem material in deciding whether to undergo the recommended treatment; (2) the patient would have forgone the recommended treatment had he or she known of the undisclosed information; and (3) as a result of the recommended treatment, *the patient actually suffers an injury the risk of which was undisclosed, or the patient actually suffers an injury that would not have occurred had the patient opted for one of the undisclosed methods of treatment.*" *Id.* at 478, 530 A.2d at 111. (emphasis added)

In *Maliszewski v. Rendon,* 374 Pa. Super. 109, 542 A.2d 170 (1988), the court held that the plaintiffs' lack of informed consent claim was properly dismissed because the plaintiffs had no medical testimony supporting their claim that the patient's severe backache and incapacitation due to pain were the result of back surgery. In discussing the necessity of expert medical testimony in informed consent cases, the court cited the language in *Neal by Neal v. Lu* that it is essential for recovery to show that as a result of the recommended treatment, the patient

actually suffers an injury the risk of which was undisclosed or an injury that would not have occurred had the patient opted for one of the undisclosed methods of treatment.

In *Grabowski v. Quigley,* 454 Pa. Super. 27, 684 A.2d 610 (1996), the plaintiff based a lack of informed consent claim on his testimony that he had consented to undergo surgery performed only by Dr. Quigley. The surgery was mainly performed by a physician other than Dr. Quigley. Following the surgery, the patient experienced continued back pain and drop foot. The trial court dismissed the claim on the ground that the patient did not provide expert medical testimony as to any injuries attributable to the surgery.

The Superior Court distinguished between the situation in which the patient alleged that there was no consent for any surgery and the situation in which the patient alleged that consent was not informed (*i.e.,* the patient, before consenting to the surgery, had not been provided with material information necessary to determine whether to proceed with the surgery).

"Unlike an informed consent case where it must be shown that ' "*as a result of the recommended treatment, the patient actually suffers an injury the risk of which was undisclosed, or the patient actually suffers an injury that would not have occurred had the patient opted for one of the undisclosed methods of treatment*[,]" ' *Id.* (quoting *Neal by Neal v. Lu,* 365 Pa. Super. 464, 478, 530 A.2d 103, 111 (1987)), it is not necessary for a plaintiff to prove such specific medical findings under a theory of battery. Therefore, while the need for expert medical testimony is necessary in an informed consent case, it is

not where the case involves battery. See *Tom v. Lenox Hill Hospital,* 627 N.Y.S.2d 874, 876, 165 Misc.2d 313, 316 (1995) (recognizing battery claim under similar facts and providing that claim 'does not require expert medical testimony as would normally be true with an informed consent claim'). 454 Pa. Super. at 37, 684 A.2d at 615. (emphasis added)

Plaintiffs contend that the case law cited above was rejected by the Supreme Court of Pennsylvania in *Montgomery v. Bazaz-Sehgal,* 568 Pa. 574, 798 A.2d 742 (2002). In *Montgomery,* the physician implanted an inflatable pump prosthesis in the patient's penis during the course of corrective surgery. The patient contended that this was done without his permission. At trial, he testified that he had certain physical injuries from the implantation of the prosthesis. He also testified as to the emotional impact of the device on his life. The trial court granted a directed verdict because the plaintiffs did not offer any expert testimony linking the implantation of the prosthesis to the physical or emotional injuries. The Superior Court partially reversed; it held that expert testimony was necessary to prove that the claimed physical injuries were caused by the insertion of the prosthesis. However, it ruled that expert testimony was not necessary to prove that emotional injuries resulted from the prosthesis.

The Superior Court's opinion included language that if this were a claim that the patient was inadequately advised of the risks and alternatives of the procedure to which the patient consented, this would be a lack of informed consent case grounded in negligence. However, the claim in this case was grounded in battery because there was no consent to the procedure.

The Pennsylvania Supreme Court affirmed the ruling of the Superior Court. However, while recognizing that the Superior Court's approach did not affect its ruling, the Supreme Court specifically addressed and rejected the characterization of a claim of lack of informed consent for surgery as sounding in negligence. The Supreme Court stated:

"Thus, this court has made clear on repeated occasions over a period of several decades that a claim based upon a lack of informed consent involves a battery committed upon a patient by a physician, an action which is distinct from a claim of a consented-to, but negligently performed, medical treatment. Since surgery performed without a patient's informed consent constitutes a technical battery, negligence principles generally do not apply. It follows, of course, that a claim involving a surgical procedure performed without any consent at all by the patient, such as the implantation in the case sub judice, also sounds in battery, and negligence requirements have no bearing on the matter." *Id.* at 585, 798 A.2d at 748-49.

It is plaintiffs' position that the *Montgomery* opinion allows recovery for injuries caused by a known risk unless the physician can establish that he or she discussed with the patient each and every material risk associated with the surgical procedure. It is also plaintiffs' position that the Superior Court case law which I cited is inapplicable because the Superior Court was using a negligence analysis.

As to the first issue, the *Montgomery* opinion simply described what has traditionally been the court's approach to claims based on a lack of informed consent. The

*Montgomery* opinion never addressed the issue of whether a patient may recover for a known risk which the patient assumed unless the physician establishes that he or she discussed each and every material risk associated with the surgical procedure with the patient.

As to the second issue, the Superior Court's opinion in *Montgomery v. Bazaz-Sehgal,* 742 A.2d 1125, 1130 (Pa. Super. 1999), is the only opinion in which the Superior Court suggested that a lack of informed consent claim is grounded in negligence while a lack of consent claim is based on a battery theory. Prior to the *Montgomery* opinion, the Superior Court opinions characterized a lack of informed consent claim as a battery on the patient. See *Nogowski v. Alemo-Hammad,* 456 Pa. Super. 750, 762, 691 A.2d 950, 956-57 (1997), where the court, citing *Sagala v. Tavares,* 367 Pa. Super. 573, 581, 533 A.2d 165, 169 (1987), *alloc. denied,* 518 Pa. 626, 541 A.2d 1138 (1988), said that if informed consent is not given "then there is a battery on the patient by the physician."

I recognize that in *Grabowski v. Quigley, supra,* the court differentiated between a surgery performed without any consent and a surgery performed without informed consent: the court stated that in the former situation the physician is liable for any injuries arising out of the surgery while in the latter situation, the physician must show that the injury involved a material risk that was not explained. However, nothing in the opinion suggests that the court was characterizing a lack of informed consent claim as a negligence action rather than as a battery. The court was simply saying that in a lack of informed consent claim, a jury cannot determine whether the injury involved a risk that should have been explained

to the patient without expert testimony. However, expert testimony is not needed where the only issue for the jury is the plaintiff's claim that he or she never consented to the surgery that the physician performed.

After the Superior Court decision in *Montgomery* and prior to the Pennsylvania Supreme Court's ruling, the Pennsylvania Superior Court continued to apply a battery theory to lack of informed consent claims. See *Bey v. Sacks,* 789 A.2d 232, 241 (Pa. Super. 2001), where the court stated:

"Dr. Sacks relies on *Montgomery v. Bazaz-Sehgal, supra,* contending that lack of informed consent claims in Pennsylvania now are 'grounded in negligence, while claims of consent are grounded in battery.' (Appellant's brief at 23.) Therefore, he argues, because under this interpretation a lack of consent claim is now considered to be under a negligence theory, a jury instruction on comparative negligence should have been given. We disagree.

"In *Montgomery,* this court alluded to the apparent distinction between informed consent cases grounded in negligence and those that are based on a battery theory. *Montgomery,* 742 A.2d at 1130. There, the plaintiffs brought a medical malpractice action alleging, based on both a lack of informed consent and negligence, that the surgeon had impermissibly expanded a surgical procedure to which the plaintiff had consented to one of vastly different outcome and magnitude. Based on those very different facts, this court concluded that the case was one of battery 'grounded on the lack of consent to the procedure itself, not a negligence case grounded on the act of inadequately advising the patient of the risks of or

alternatives to the procedure (an "informed consent" case).' *Id.* at 1131.

"Dr. Sacks now argues that this court's statement in *Montgomery* acknowledging the possible existence of an informed consent theory grounded in negligence supports the theory that he was entitled to a comparative negligence charge to the jury. However, in light of the significant volume of case law adhering to the battery theory of informed consent claims, until our Supreme Court holds otherwise, we decline to find that this lone statement grants appellant license to proceed under a negligence theory of lack of implied consent."

## II.

Defendants have also filed motions in limine to strike plaintiffs' expert reports on the ground that the proposed testimony does not permit the fact-finder to determine the materiality of the risks described in the expert report. Many of the objections to the reports involve risks of injuries that the plaintiff did not experience. Consequently, testimony as to these risks is inadmissible under this court's ruling in Part I of this opinion.

Under settled case law, the plaintiff is required to present expert testimony as to the nature of the harm attendant to the procedure and the probability of it occurring. The jury must then decide whether these are risks that a reasonable person would have considered material to the decision of whether or not to undergo treatment. See *Moure v. Raeuchle,* 529 Pa. 394, 404-405, 604 A.2d 1003, 1008 (1992) (citations omitted) , where the Pennsylvania Supreme Court described the roles of the expert and the jury as follows:

"In order for a consent to be considered informed it must be shown that the patient was advised of 'those risks which a reasonable man would have considered material to his decision whether or not to undergo treatment.' . . . The determination of what is material is a jury question, and in making that determination the jury must be supplied with expert information as to the nature of the harm attendant to the procedure, and the probability of that harm occurring. Thereafter, the jury must determine whether the type of harm and the probability of its occurrence is information which a reasonable patient would consider in deciding whether to undergo the medical procedure."

Also, see *Bey v. Sacks, supra,* 789 A.2d at 238 (citations omitted), where the court stated:

"Our Supreme Court previously has held that the question of what is a material risk is one for the jury. . . . However, in making that determination, 'the jury must be supplied with expert information as to the nature of the harm attendant to the procedure, and the probability of that harm occurring.' . . . The jury must then determine if the type of harm and the probability that it may occur is information that a reasonable patient would consider in making the decision whether to undergo the medical procedure."

Defendants contend that for various risks described in the expert reports, the expert fails to adequately describe the harm that may occur or the probability of that harm occurring. Consequently, the report must be stricken because the jury is not in a position to determine whether or not the risk is so remote or so incidental as to not constitute the type of harm that a reasonable person in

the patient's situation would consider significant in deciding whether to have the operation. Plaintiffs disagree with defendants' characterizations of the reports.

The admissibility of the expert reports will be determined by the arbitrator assigned to hear the case at the arbitration hearing. Once the arbitration hearing has begun, it shall not be continued in order to permit any party to file supplemental expert reports.

## III.

Defendants have filed a motion in limine seeking a court order barring plaintiffs from referring to package inserts. This matter shall also be decided by the arbitrator who shall determine whether package inserts are admissible and, if so, the purposes for which they may be admitted.

## ORDER

On September 22, 2003, it is ordered that defendants' motions in limine are partially granted and in their battery claims based on a lack of informed consent plaintiffs may seek recovery only for injuries arising out of the implant surgery, the risks of which were undisclosed, or for injuries that would not have occurred if plaintiffs had opted for an undisclosed method of treatment.