## Vogelsberger v. Magee-Women's Hospital

*Anthony A. Seethaler,* for plaintiff.
*Diane Barr Quinlin, Jennifer Keadle Mason* and *Anthony J. Williott,* for defendants.

BALDWIN, *J.,* October 4, 2005—

## BACKGROUND

This opinion addresses the cross-appeals filed by defendant Magee-Women's Hospital of UPMC Health System and plaintiff Michele Vogelsberger in the above captioned case. The pleadings reveal that Ms. Vogelsberger

initiated this civil lawsuit against defendants Magee and Anthony F. Gentile M.D. on several theories of recovery, namely, negligence, professional medical negligence and breach of contract on April 30, 2001. Ms. Vogelsberger's breach of contract claim against Dr. Gentile, however, did not rest on a specific written document, per se, rather it was premised on a verbal understanding that her ovaries were to be removed.

Plaintiff did not assert any claims against either of these defendants based on either a lack of informed consent or a battery. On April 13, 2004, the court granted Dr. Gentile's motion for summary judgment dismissing the alleged breach of contract claim filed against him.

The jury trial began on January 25, 2005, and concluded on January 31, 2005. Following its deliberations, the jury returned a verdict in favor of the plaintiff and against the defendants, and awarded plaintiff money damages from Magee in the amount of $350,000, and from Anthony F. Gentile M.D. in the amount of $250,000.

Defendants each filed timely post-trial motions for relief and briefs in support thereof, under Pa.R.C.P. 227.1. Among the alternative arguments set forth therein, the defendants sought a new trial or a remittitur of the jury's award of $600,000 in damages because they believed that professional liability was unfounded and the damages awarded were excessive and unjust. Plaintiff also filed a post-trial motion for the calculation of appropriate delay damages. The decision on plaintiff's motion was viewed as premature and postponed since either an acceptance of remittitur or a new trial on damages were still viable options.

On May 24, 2005, by order of court, the undersigned disposed of the parties' post-trial motions. If plaintiff rejected the grant of remittitur, then a new trial on damages alone would follow. In granting the remittitur of the jury's damage awards, the court refused to set aside the verdicts against the defendants as to liability, but did modify the awards in favor of Ms. Vogelsberger and against defendant Magee in the amount of $75,000, and against defendant Dr. Gentile in the amount of $125,000. The jury's overall award of damages in favor of the plaintiff was thereby reduced from $600,000 to $200,000.

On June 8, 2005, the plaintiff rejected the court's remittitur of the jury's award of damages as to both defendants. Consequently, a new trial on damages was to follow on the next trial term. However, Magee and Ms. Vogelsberger filed cross-appeals. Dr. Gentile did not file an appeal.

These appeals contest (1) the court's decision to remit the jury's verdict, pursuant to Pa.R.C.P. 1042.72(b); (2) the plaintiff's subsequent rejection of the remittitur, in accordance with Pa.R.C.P. 1042.72(c); and (3) the resultant grant of a new trial limited to noneconomic damages only. Plaintiff also complains, in her current appeal, that the court erred in previously granting Dr. Gentile's motion for summary judgment dismissing the alleged breach of contract claim filed against him by order dated April 13, 2004.

Defendant Dr. Gentile filed a motion to quash the plaintiff's appeal of the order of court dated May 24, 2005. Magee joined Dr. Gentile in that motion. In response thereto, plaintiff has filed a submission for ex-

traordinary relief. The motions to quash were denied without prejudice by a per curiam order of the Superior Court dated August 19, 2005.

For the reasons that follow, the jury's verdict must stand; the remittitur is correct; the grant of a new trial on damages only is proper; and the court did not previously err in dismissing plaintiff's breach of contract claim.

## FACTS

Dr. Anthony F. Gentile is a doctor of obstetrics and gynecology practicing in Pittsburgh, Pennsylvania. On March 12, 1999, Michele Vogelsberger, age 32, visited the office of Dr. Gentile complaining of pelvic pain, abnormal bleeding and pain with intercourse. Nurse Gregory completed a gynecological history and information form during the March 12, 1999 visit. Ms. Vogelsberger had a history of fibroid uterus and possible endometriosis.

Dr. Gentile first saw Ms. Vogelsberger on April 28, 1999. Following a consultation with the patient, review of the patient history, and review of the notes from gynecologists that had previously treated Ms. Vogelsberger, Dr. Gentile dictated a patient history and the results of a physical stating that a total abdominal hysterectomy and *possible* bilateral salpingo-oophorectomy would be performed on Ms. Vogelsberger. Dr. Gentile obtained the patient's informed consent for the surgery.

Dr. Gentile performed a total abdominal hysterectomy on Ms. Vogelsberger at Magee-Women's Hospital on May 7, 1999. Dr. Gentile deemed it unnecessary

to remove Ms. Vogelsberger's ovaries and a bilateral salpingo-oophorectomy was not performed.

At some point after the surgery, while in the care of Magee-Women's Hospital, Ms. Vogelsberger suffered a respiratory arrest and was transferred to the Intensive Care Unit. Ms. Vogelsberger was returned to her regular hospital room the morning after the surgery and respiratory arrest. Ms. Vogelsberger was told by a third party that her ovaries had not been removed.

Ms. Vogelsberger testified that she was upset when she learned of this but she never said anything to Dr. Gentile or complained to his staff or the hospital. Ms. Vogelsberger believed that she and Dr. Gentile had specifically agreed that her ovaries would be removed because her mother had cancer and she was afraid of developing cancer herself. The record fails to show that Dr. Gentile made a specific written agreement with Ms. Vogelsberger. Plaintiff's ovaries were to be removed only if medically necessary.

From the time of her release until Ms. Vogelsberger began experiencing pelvic pain five years after the May 7, 1999 surgery, she did nothing further.

After consulting with Dr. Deitrick, Ms. Vogelsberger had a laparotomy procedure performed for the removal of her ovaries, tubal ovarian adhesions and her tubes on July 16, 2004.

Plaintiff's ovaries were healthy at the time of both surgeries.

## ISSUES

At the heart of these matters lie the questions of (1) whether the jury's award of damages is fair and reason-

able; (2) whether the jury's decision shocks the conscience of the court so as to suggest that it resulted from improper influences, partiality, prejudice, mistake or corruption; and (3) whether plaintiff could recover damages for mental anguish and suffering under her alternative claim against Dr. Gentile for breach of an alleged oral contract to perform a particular procedure when the procedure was not performed by the defendant doctor.

## ARGUMENTS

Plaintiff asserts that the court abused its discretion in granting a remittitur of the verdict awards in favor of plaintiff and against defendant Magee in the amount of $75,000, and against defendant Dr. Gentile in the amount of $125,000. Plaintiff also argues that Dr. Gentile and she had entered into a contract to remove her ovaries and when he did not remove her ovaries, she claims that she suffered compensatory noneconomic damages, such as mental anguish, although there was no objective evidence of disease impacting her ovaries at any time up to the time of their removal.

## DISCUSSION

Remittitur is appropriate where, as here, a defendant health care provider challenges the verdict on the grounds of its excessiveness and the evidence supports defendant's contention. See 40 P.S. §1303.515. In general, a court shall, in deciding a motion for remittitur, consider evidence of the impact, if any, upon the availability or access to health care in the community, if the defendant health care provider is required to satisfy the

verdict rendered by the jury. *Id.* In analyzing the reasonableness of a damage award, the court should, as here, take into consideration all evidence related to factors such as the cause and severity of the injury; the physical or objective manifestation of the injury complained of; whether the injury is permanent and/or degenerative in nature; if the complainant's injury precludes him or her from enjoyment of his or her livelihood or life's activities in any way; the amount of expenses and costs to be born out-of-pocket; and the demands set forth in the pleadings. Pa.R.C.P. 1042.72(b); and see *Carrozza v. Greenbaum,* 866 A.2d 369 (Pa. Super. 2004).

Applying these factors to the instant case, the evidence indicates that there is slight physical injury. The evidence also indicates that there is certainly no permanent injury. Plaintiff is only requesting noneconomic damages. Plaintiff is able to enjoy all activities she did prior to the surgery and aftercare. Plaintiff's only noneconomic damages are the four days of additional hospitalization and her allegation of some mental anguish because her ovaries were not removed. Plaintiff has no memory of the respiratory arrest. Because of her reaction to the medication which caused the arrest, other painkillers had to be administered. However, there is no evidence of record to establish that these painkillers were less effective.

Therefore, the court's remittitur of the jury's award of plaintiff's noneconomic damages on these facts is supported by the evidence.

A damage award is excessive if it deviates substantially from what could be considered reasonable compensation. In deciding whether the award deviates substantially from what could be considered reasonable

compensation, the court must consider (1) the evidence supporting plaintiff's claim; (2) factors that should have been taken into account in making the award; and (3) whether the damage award, when assessed against the evidentiary record, strongly suggests that the trier of fact was influenced by passion or prejudice. The factors that this court considered are set forth in the jury instructions as described in Rule 223.3. Pa.R.C.P. 1042.72(b).

While the court finds that the record in this case contains relevant evidence probative to plaintiff's allegations of pain and suffering, the court is shocked by the amount of damages awarded. The fact-finder may have inadvertently reached its excessive award of noneconomic damages for plaintiff's compensable injury by attaching undue weight to plaintiff's fear of future disease, without any basis in fact. *Doe v. Raezer,* 444 Pa. Super. 334, 664 A.2d 102 (1995), citing, *Cashdollar v. Mercy Hospital of Pittsburgh,* 406 Pa. Super. 606, 618, 595 A.2d 70, 76 (1991). *Krysmalski by Krysmalski v. Tarasovich,* 424 Pa. Super. 121, 622 A.2d 298 (1993) (Remittitur proper where evidence of record suggested that excessive verdict was result of, inter alia, a mistake). That injury, and attendant pain and suffering, in the court's opinion, should neither be trivialized or exaggerated by virtue of the parties' advocacy. *Raezer, supra.* A court's remittitur should affix the highest amount of an award of damages that a jury could properly return based on all of the evidence of record.

The adjusted verdict and award of noneconomic damages is reasonably related to the facts. But for defendant Magee's negligence, plaintiff either would not have experienced respiratory arrest or may not have been hos-

pitalized for an additional four days, and but for defendant Dr. Gentile's negligence, she may have had no mental anguish.

Defendant Magee contends that the record was devoid of any evidence of a causal link between any alleged negligence and the actual harm suffered by plaintiff. Defendant Magee submits that the plaintiff failed to present sufficiently reliable evidence of a compensable injury due to any conduct directly attributable to it. The court is not persuaded by defendant Magee's arguments.

By all accounts, the duration of this injury was short-lived. Had the employee of Magee adhered to essential nursing standards of care and followed the medical directive, as ordered, this event may have been prevented. The testimony on this point clearly permits a fact-finder to logically deduce that there is a causal link between plaintiff's harm and the nurse's failure to adequately evaluate and attend to this patient, as directed by her treating physician.

Defendant Magee next takes exception to the court's denial of its motions for the entry of a compulsory nonsuit and, thereafter, for a directed verdict for the same rationale. See *e.g., Mitzelfelt v. Kamrin,* 526 Pa. 54, 584 A.2d 888 (1990). Defendant Magee further argues that the hospital is entitled to a judgment in its favor, and against the plaintiff, for reasons notwithstanding the verdict. *Goldberg v. Isdaner,* 780 A.2d 654 (Pa. Super. 2001). Alternatively, defendant Magee argues for a new trial, presumably as to both liability and damages. Plaintiff's arguments address those points as well.

A review of the evidence of record reveals that plaintiff met her requisite burden of proof. Plaintiff presented sufficient evidence from which a fact-finder could reasonably ascertain that Magee and Dr. Gentile breached the standards of care applicable to her situation and that these deviations or departures from the norm directly contributed to the injuries she sustained while in the care of Dr. Gentile and the healthcare facility. In so doing, plaintiff proved a compensable injury, caused by a respiratory arrest which may have increased her risk of harm even though she has no memory of it, perhaps four additional days of hospitalization and the mental anguish she suffered upon hearing she still had her ovaries. As stated previously, there are no ill effects or permanent injury.

The record supports the court's grant of a remittitur of the verdict awards in favor of plaintiff and against defendant Magee in the amount of $75,000, and against defendant Dr. Gentile in the amount of $125,000. Compare *Petrasovits v. Kleiner,* 719 A.2d 799, 806 (Pa. Super. 1998). The record contains sufficient evidence of a causal link between defendants' negligence and the specific harm suffered by plaintiff.

It is equally clear, for the above stated reasons, that defendant Magee is not entitled to the entry of a compulsory nonsuit against plaintiff, nor a directed verdict, or for that matter any requested post-trial relief, other than a new trial on the issue of damages. Cf., *Zeffiro v. Gillen,* 788 A.2d 1009 (Pa. Super. 2001). Defendant Magee's arguments to the contrary simply are not persuasive. The verdict as to liability reached by the jury based on the competent and credible evidence presented is not against the sufficiency or weight of that evidence.

The record further demonstrates that Ms. Vogels-berger wanted her healthy ovaries removed because her mother had cancer. No other female family member had cancer. All parties agree that Ms. Vogelsberger had no evidence of cancer. Plaintiff's claim of suffering thus consists of her mental anguish or fear of contracting cancer after learning that Dr. Gentile failed to remove her healthy ovaries. Accordingly, the jury's monetary award of noneconomic damages to the plaintiff is excessive because it is against the weight of this probative evidence, as discussed previously, and due to the fact that it strongly suggests that the jury was influenced to some extent by passion or prejudice.[1] The jury's award of noneconomic damages shocks the conscience in that it is not reasonably related to the proven causal injury, especially in consideration of the totality of the evidence as to the established liability of each of these defendants. See *e.g., Bindschusz v. Phillips,* 771 A.2d 803, 813 (Pa. Super. 2000).

Plaintiff, finally, complains that the court erred in previously granting Dr. Gentile's motion for summary judgment dismissing the alleged breach of contract claim filed against him by order dated April 13, 2004. This court disagrees with plaintiff's final argument. Pennsylvania law is clear that in the absence of a battery claim, which plaintiff did not plead, a breach of contract action against a physician for failure to perform a service will not lie where the factual averments essentially

---

1. There are numerous cases mostly concerned with asbestos exposure which consistently hold that a plaintiff cannot recover damages based on fear or speculation. *Busfield v. A. C. & S. Inc.,* 434 Pa. Super. 424, 643 A.2d 1095 (1994) (No claim for mental anguish based on fear of cancer). The basis of the instant case is different.

sound in professional negligence. See *Grabowski v. Quigley,* 454 Pa. Super. 27, 684 A.2d 610 (1996).

In *Grabowski,* the court, in determining a motion for summary judgment, held that based upon 40 P.S. §1301.606, a special contract in writing was not necessary to make the health care provider a warrantor or guarantor of a cure, because Grabowski had not alleged a warranty theory or failure to obtain a specific result.[2] Rather, Grabowski alleged that he and the doctor had entered into an oral contract whereby the doctor specifically promised that he would perform the surgery, and the doctor did not in fact perform the surgery. There, the patient consented to a procedure based on the doctor's representations only to learn afterwards that the procedure was not performed by the doctor, pursuant to that informed consent. The *Grabowski* court determined that the plaintiff need not establish the existence of a written contract in order to recover from the physician under the breach of contract claim because the factual averments in support of the plaintiff's allegations of breach of contract were distinct from plaintiff's medical negligence claim and also sounded in battery. That is not the case here. Distinguish, *Grabowski.*

On appeal, the Pennsylvania Superior Court concluded that the trial court in *Grabowski* incorrectly reasoned that there were no genuine issues of material fact in regard to whether the physician non-negligently

---

2. Although 40 P.S. §1301.606 has since been repealed, this court notes that 40 P.S. §1303.105 contains the same requirement that "in the absence of a special contract in writing, a health care provider is neither a warrantor nor a guarantor of a cure."

breached the alleged oral contract. Again, that is not the case here.

Ms. Vogelsberger, unlike the plaintiff in *Grabowski,* did not allege any battery. Ms. Vogelsberger, in the alternative, alleged that Dr. Gentile was professionally negligent for failing to remove her ovaries during the surgery. Dr. Gentile did not enter into a specific written agreement to remove Ms. Vogelsberger's ovaries.

Plaintiff's complaint sets forth facts suggesting that Dr. Gentile committed professional negligence by negligently failing to remove plaintiff's ovaries. Plaintiff's complaint, alternatively, sets forth similar facts suggesting that Dr. Gentile breached a promise he made to plaintiff by failing to remove plaintiff's ovaries. The gist of the action doctrine denotes that when allegations premised on a tort are the crux of a plaintiff's legal theory of recovery against a defendant, any alternative theory of recovery, *i.e.,* one premised on a claim for breach of contract, usually cannot survive a motion to dismiss, if the material averments rely on the same facts.

Because the accusations concerning Dr. Gentile's alleged breach of contract are, in essence, the same averments of his failure to adhere to pertinent professional standards of medical care, the gist of plaintiff's action to recover noneconomic damages against him was in the nature of a claim for professional negligence. The facts of record clearly do not support plaintiff's claim for noneconomic damages under a breach of contract.

In the case at bar, the duty, breach (failure to perform), and cause of the noneconomic injuries for which a monetary recovery was sought rests squarely on the material evidence supporting the claim of medical malprac-

tice, and not the breach of contract claim for failure to render a service that was not guaranteed. The record establishes that Dr. Gentile did not remove plaintiff's ovaries since it was not medically necessary.

If Dr. Gentile had agreed to perform this elective surgery because of plaintiff's cancer concerns and then failed to perform the procedure or at least explain why he failed to perform the procedure, the jury could find him professionally negligent based on the expert's testimony that this was a breach of professional standards. In that scenario, the jury could conceivably award plaintiff money damages for any mental anguish and suffering caused thereby under this theory of recovery.

Based on the instant record, the court did not err in dismissing plaintiff's breach of contract claim against Dr. Gentile.

## CONCLUSION

Since the undersigned properly denied all other posttrial motions filed by the respective parties and because plaintiff rejected the court's remittitur of the jury's verdict, the grant of a new trial to exclusively dispose of the issue of damages is warranted.

The court's order dated May 24, 2005 should be affirmed.